MOSS *v.* JOURDAN.

[92 South. 689, No. 22442.]

1. DEEDS. *Rule that earlier clauses prevail over repugnant later ones not applicable where they can be made to harmonize with general purpose deed.*

   The rule that "if there be in a deed earlier clauses which are repugnant and inconsistent with the later ones the former shall prevail" is subject to the qualification that an election cannot be made between repugnant and inconsistent clauses "if they can be made to harmonize with the general purpose and scheme of the parties as derived from the whole instrument."

2. MINES AND MINERALS. *Stipulation in deed held valid and to reserve to grantor title to minerals.*

   A stipulation in a deed to land that it is understood and agreed by the grantee that the grantor "shall have and own all minerals that may be on the above described land" is valid and reserves to the grantor the title to all mineral in and on the land.

3. MINES AND MINERALS. *Owner of mineral may remove it from land, though other person owns surface but must allow sufficient land to remain to support surface.*

   Where one person owns the surface of land and another the mineral therein, the owner of the mineral may remove it from the land,

but in so doing he must allow sufficient of the subjacent land to remain to support the surface in its natural state, although the mineral may be of more value than the surface.

4. INJUNCTION. *Owner of minerals not enjoined from removing it at instance of owner of surface unless injury to surface is irreparable.*
   Where one person owns the surface of land and another the mineral therein and to remove the mineral will injure the surface, the owner of the mineral will not be enjoined from removing it at the instance of the owner of the surface, but the owner of the surface will be remitted to his action at law for damages unless the injury to the surface is irreparable.

5. INJUNCTION. *Essentials of "irreparable injury" stated.*
   The essential features of an "irreparable injury" are: (1) That the injury is an act which is a serious change of, or is destructive to, the property it affects either physically or in the character in which it has been held and enjoyed. (2) That the property must have some peculiar quality or use such that its pecuniary value, as estimated by a jury, will not fairly recompense the owner for the loss of it.

6. INJUNCTION. *Land will be protected without reference to quality, use, or value.*
   Land is *per se* property of peculiar value, and will be protected by injunction without reference to its quality, use, or value.

7. INJUNCTION. *Continuous trespass enjoined.*
   If a trespass is continuous in its nature, and repeated acts of trespass are done or threatened, although each of such acts taken by itself may not be destructive or inflict irreparable injury, and the legal remedy may therefore be adequate for each single act, if it stood alone, the entire wrong may be prevented or stopped by injunction.

8. INJUNCTION. *Owner of minerals enjoined from removal where removal will injure surface.*
   The rule that an injunction will not be granted or refused where so to do would injure the person enjoined or refused more than the opposite party has no application in a suit by the owner of the mineral in land to enjoin the owner of the surface from interfering with the removal of the mineral when to remove it will injure the surface.

APPEAL from chancery court of Tishomingo county.
HON. A. J. McINTYRE, Chancellor.

Bill by D. T. Moss against J. C. Jourdan. From decree giving insufficient relief, the complainant appeals, and the defendant cross-appeals. Affirmed.

*Cox & Cox,* for appellant.

The ownership of mineral, where there has been a severance of mineral from the surface either by grant or reservation or exception, ordinarily implies, as of course, the right to go upon the land and take and remove the mineral, to destroy, at least in part, the surface, if necessary, as by digging pits, opening shafts, etc., and to use so much of the surface as may be necessary in mining operations. This is implied in every grant of the mineral reserving the surface, and in every grant of the surface reserving the mineral; and is held to be in contemplation of the parties to the instrument by which the severance is effected. To hold otherwise would nullify the right to sever the surface and mineral rights, which right the authorities uniformly hold. 27 Cyc. 688; 20 A. & E. Ency. 774; *Mervin* v. *Brewster,* 55 N. Y. 538, 14 Am. Rpts. 322; *Atterbury* v. *Blair,* 244 Ill. 363, 135 Am. St. Rpts. 343; *Demoss* v. *Sample* (La.), 78 So. 486.

Note at page 690, of 68 L. R. A., which quotes Lord Fitzgerald in *Darley Main Colliery Company* v. *Mitchel,* L. R. 11, App. Cas. 127, to the effect that it is settled law that the owner of subjacent minerals may excavate and remove them to the utmost extent, but should exercise that right so as not to disturb the lawful employment of the owner of the surface. The excavation and removal of the minerals does not *per se,* constitute an actionable invasion of the right, although subsequent events show that no adequate supports have been left to sustain the surface, but when in consequence of not leaving or providing sufficient supports, a disturbance of the surface takes place, that disturbance is an invasion of the right of the owner of the surface, and constitutes his cause of action.

This right is held however by many cases subject to the limitation that mining operations must be so conducted as not to cause the subsidence or destruction of the surface, it being the right of the owner of the surface to have the surface supported and preserved in its original position

and substantial integrity, though not, it must be borne in mind, to such an extent as to deny right to sink shafts, dig tunnels, etc.

This doctrine has been upheld and enforced to such an extent as to deny to the owner of shale underlying land and itself practically constituting the surface (there being only about two or three inches of soil over the shale) the right to take and remove the shale because this could not be done without destroying the surface. *Bibby* v. *Bunet* (Ala.), 58 So. 916.

In this case, while the surface overlying the shale was thin, it was well timbered, covered with grasses and herbs and valuable for agricultural and residential purposes. The court sustained a permanent injunction against the owners of the mineral rights, restraining them from disturbing, destroying, removing or endangering the soil or surface, or the herbs, grasses or timber thereon, and this without any regard to the relative value of the mineral and the surface right, the court holding pecuniary compensation inadequate.

This is a very extreme case. If it be held to be the law in Mississippi, then appellant, though incontestably the owner of all the gravel on the land in controversy (even under the authority of this very case), has no power to take and move any part of it; and, regardless of the fact, that the underlying gravel is vastly more valuable than the surface, and that the pecuniary value of much of the surface where the gravel is most abundant and accessible is very slight, and in fact almost negligible (see testimony of S. H. Allen at pages 88 and 89 of record J. C. Jourdan at page 112, of record), yet appellant must have left untouched a large and valuable property that is justly his, in order that it may serve as support for the surface soil of appellee, which according to himself and his own witness is practically worthless.

Fortunately this court is not bound by any ancient precedents in this matter. The question is still one of first impression, and this court is free to adopt whatever rule

upon the subject it thinks will best promote the intention and wishes of parties to conveyances like that in the case at bar, and which will be wisest and best as a matter of public policy.

We respectfully submit that it would be more consonant with reason and justice and more promotive of the public interest for the court to hold that, while in the mining of coal and other minerals, that lie in comparatively thin strata deep below the surface, the miner must preserve surface substantially in its original integrity; this rule should not apply to owners of such minerals as shale, gravel and building stone, which lie in thick strata, immediately beneath the surface and cannot be quarried without breaking the surface. In such cases where the grantor conveys the surface, reserving the minerals, or conveys the mineral reserving the surface, the character of the mineral and the nature of the operations required for its removal are always well known to both parties to the conveyance; and they should be held as a matter of law to have contracted with reference thereto; and the property in or ownership of the mineral, should be held, as a matter of law, to carry with it the perfect right to do whatever may be reasonably necessary for taking possession of and utilizing the mineral.

Such a rule of construction in cases of this character would have the merit of common sense, would effectuate the understanding and intention of the parties to the conveyance, would do equity and justice as between the parties and would promote the development of the natural resources of the state in the materials needed in the building of streets and highways and the erection of houses and other edifices.

The question presented here for decision is emphatically one of first impression in Mississippi. We count ourselves fortunate in being able to present it to a court that has long freed itself from the shackles of extreme technicality; that is controlled by no slavish subservience to artificial, arbitrary and unreasonable rules of construc-

tion; and in all causes tried by it looks through form and verbiage to the real intent; and refuses to sacrifice justice on the altar of precedent.

But, if the court cannot go with us in our view of what would be a just and reasonable construction so far as to hold that our right to remove the gravel is a perfect one, even though in its exercise we must destroy the surface where we operate; we submit that it should at least go so far as to recognize in us a qualified right to take the gravel upon terms that we make full compensation to appellee, and to announce that equity will not restrain us from removing the gravel, nor permit appellee to do so; if we will compensate appellee for all damages done to the surface.

The extremely harsh and severe rule adopoted in *Bibby* v. *Bunch,* which, in case of a severance of the minerals and the surface, absolutely destroys the value of all property in minerals where they cannot be removed without destroying the surface covering it, rests for authority chiefly on the case of *Noonan* v. *Pardue,* 200 Pa. 474. This case superficially considered, seems to support the rule announced by the Alabama court. However, in a later case the same court, while not formally overruling the case of *Noonan* v. *Pardue,* greatly qualifies and limits it, and announces a very much more liberal and wholesome doctrine, which while fully compensating the surface owner, for all damage to the surface, preserves the right of the owner of the subjacent mineral to have the use and enjoyment of his property, and incidentally promotes the interest of the general public by making possible the use commercially of minerals affected by such conditions.

In the case of *Berhey* v. *Bernwind White Coal Co.,* 220 Pa. 65. 16 L. R. A. (N. S.) 851, there had been a severance of the coal underlying the land from the surface by a grant of all the coal. The grantee of the coal was mining in such a way as to leave no support for the surface and doing permanent and irreparable damage to the farm of grantor. On these facts the grantor, who owned the surface, filed a bill for an injunction to restrain the grantee,

who was mining the coal, from mining and removing the coal in such a manner as would do damage present or future to the surface by causing a subsidence or breaking thereof. The lower court granted and perpetuated the injunction. So far the case is very much like the case of *Bibby* v. *Bunch,* but here the resemblance ceases. The supreme court, in reviewing the decision of the chancellor, said: "The real question involved in this case is one of remedy rather than of legal right. The controversy grows out of the assertion of the right on the part of the grantor, who has sold and conveyed all the coal underlying the land in question, to restrain his grantee and its lessee, the appellant companies, from mining and removing the coal in such a manner to do injury to the surface. The right to surface support was not expressly waived in the deed of conveyance, and therefore the owner of the surface is entitled to the benefit of the rule which imposes upon the underlying or mineral estate the servitude of sufficient support to the upper or superincumbent strata. This is the settled law in Pennsylvania and nothing said or decided in the present case is intended to weaken or modify it. Each party to this proceeding stands upon certain legal rights, and the principal inquiry must be whether the appellee, under the facts produced at the hearing in the court below, is in a position to ask a court of equity to interfere by injunction. No general and unbending rule can be laid down in such cases. Much depends upon the facts of each particular case. Of course if the injury complained of is irreparable, so that it cannot be adequately compensated in damages, or if the act complained of is in the nature of a trespass or tort, or if the wrong sought to be redressed amounts to a nuisance, which, by reason of the persistency with which it is repeated, threatens to become permanent, courts of equity will interfere by injunction to preventing such wrongs (citing cases). The present case does not come within the reason or spirit of the rule announced in these cases."

The court proceeded to declare and hold that the injury complained of was not irreparable, in the sense that it could not be adequately compensated in damages; and that the act of the owners of the coal in mining and removing it could not be said to be trespass, tort or nuisance within the meaning of the rule of the cases cited in which equity has intervened by injunction to protect the surface right.

Nor is this Pennsylvania case the only one that has announced such wholesome and equitable principle. In *Lloyd* v. *Catlin Coal Co.,* 210 Ill. 460, 71 N. E. 335, a bill was filed by the surface owner, seeking to enjoin the owner of the underlying coal and mineral from mining in the manner he was doing, and praying that the court direct that the coal be mined in a particular way; the bill alleged that part of plaintiff's land had already subsided and that more would subside, rendering it unfit for farming, the purpose for which it was used; there was no allegation that the damages were not readily susceptible of computation or that defendant was insolvent. The court said that in a city where the land is used mainly for the support of building and valuable improvements, such a subsidence would work an irreparable injury and would be stayed by injunction; but that on the facts of the case the bill was properly dismissed. An injunction directing the manner of mining was also refused, the evidence being conflicting was to how much coal could safely be mined without endangering the surface, and it appearing that the surface owner could recover from the operator of the time upon damage being shown to have resulted from the operations.

Again in *Hilton* v. *Granville,* 4 Beav. 130, an injunction was sought to restrain the working of mines in such a manner as to injure or endanger plaintiff's house. There was evidence that other houses in the same locality had been injured by like mining operations. It was held that no injunction should issue upon these facts since the defendant was liable to make compensation for any damage which might result and the plaintiff should therefore be left to his legal remedy.

We have not read the full text of the last two cases but only the statement of them to be found at page 852, 16 L R. A. (N. S.) which we presume is correct

In conclusion we ask the court to hold that, in case of the severance of minerals from the surface when the mineral is shale, gravel, marble or other stone, or other minerals *ejusdem generis,* which cannot be quarried without destroying the surface, the rule protecting the surface from injury, where the thing to be mined is coal or other minerals of like kind lying deep below the surface and capable of being mined without disturbing the surface, should not be applied; but that in all such cases a rule should be applied which will effectuate the intention of the parties and preserve effectually to the owners of the mineral their property therein by declaring that they have a perfect legal right to take and remove their property without regard to the effect of their operations upon the surface. And accordingly we ask this court to reverse that part of the learned chancellor's decree which denies an injunction to restrain appellee from refusing us access to the land and from preventing us from going upon it and removing gravel. If this cannot be done then we pray this high court of equity to apply for our relief the principle of equity announced in *Berky* v. *Berwind White Coal Co.,* by announcing that under the peculiar facts of this case, where such vast amounts of gravel can be removed with such inconsiderable injury to the surface, and where the surface injury can be adequately compensated in damages, we shall be allowed to take and remove gravel upon condition that we make full pecuniary compensation for all injury done to the surface. And we ask the court to reverse that part of the decree below which denies our right to remove the gravel and to render such decrees here as will preserve for us and make available our property rights in the mineral on the land according to the perfectly obvious intention of the parties to this litigation deraign their rights. And if we have not prayed the proper relief we pray such other, further and different relief as

to the court under the peculiar facts of the case may seem equitable and right.

We invoke all the vast powers of this equity court to vindicate and save for us our legal and equitable rights in this case.

*Boone & Wortham,* for appellee.

Attorney for cross-appellee copies, on page seven of his brief, a quotation from *Pike* v. *Monroe,* 36 Me. 309. This case of *Pike* v. *Monroe,* following the quotation therefrom above, uses this language: "Whatever is expressly granted, or covenanted, or promised cannot be restricted or diminished by subsequent provisions or restrictions; but general or doubtful causes precedent may be explained by subsequent words and clauses not repugnant or contradictory to the expressed grant, covenant or promise;" and this above quotation in the case of *Pike* v. *Monroe,* was taken from *Cutler* v. *Tufts,* 3 Pick. 272, and is the identical quotation used by Judge Whitfield in the case of *Barksdale* v. *Barksdale,* quoted in my original brief, demonstrating that the court was adhering to the rule that a subsequent repugnant clause could not prevail over a previous clause to which it was repugnant or contradictory.

We do not think the case of *Massey* v. *Whitaker,* 88 So. 518, has the effect to destroy with one fell blow all the decisions previously entered by this court and was not so intended, it will be observed that the deed in the Massey case in the operating clause defines the character of ownership conveyed to the grantee in such a way as to leave no doubt of the intention of the grantor therein. The first part of the deed was a simple conveyance to Mrs. M. A. Hearn of certain described land, and immediately following the description is the clause describing the nature of the conveyance and defining what the word "convey" previously used meant. All of which preceded the *habendum* clause in said deed.

It is not necessary at all to speculate as to the meaning of this deed in the Massey case, as it was perfectly clear and it cannot really be said that there is any conflict in the operating part of the deed with the *habendum,* nor can it be said that there are two separate intentions expressed in said deed.

There is a wide distinction between the deed in the Massey case and the one involved in the case at bar. The deed in the case at bar is as complete as it is possible to make a deed, and this exception relied upon appears more in the nature of a note at the bottom of a page than as a part of the deed.

Cross-appellee relies upon the case of *Goosey* v. *Goosey,* 48 Miss. 216. That case does not in the most remote way conflict with our contentions in the case at bar, as we read it. The court in that case demonstrated that there was one and only one intention expressed in that deed taking it as a whole, and did not in the most remote way attempt to overrule, modify or qualify the principle contended for by cross-appellant in the case at bar. The Goosey case simply held that there was one harmonious thought, purpose and intention set forth in the instrument being construed in that case.

Cross-appellee, at the bottom of page 9 of his brief, speaking of the reservation relied upon by cross-appellee, says: "The effect is to exclude the mineral on the land from the operation of the deed and to create an exception as to the mineral, and not a mere repugnancy as to the estate or interest conveyed." The above quotation, it will be noticed, states that this exception excludes the mineral from the operation of the deed. If that be true, then it is necessarily repugnant to the deed and necessarily repugnant to whatever estate or interest was conveyed and warranted by the deed, as there are no limitations or restrictions either in the conveying part of the deed or the covenants of warranty of the deed; and to my mind it is absolutely impossible to remove this mineral from the conveyance without literally destroying the said

deed in so far as the mineral in the land was concerned, the mineral, according to cross-appellee, being that part of the realty of the exceeding greatest value. If that can be done, then the bar of Mississippi will of necessity have to re-learn the law of Mississippi on the question involved in the case at bar.

Now let us keep in mind the real contention of cross-appellant which is that the deed in this case, completed in every respect, conveys and warrants the title to the land, which carries everything from the sky to the center of the earth, and that the intention to convey is as clearly expressed by the language used in the deed as it is possible to express an intention.

Judge WHITFIELD, in the case of *Dunbar* v. *Aldridge,* 79 Miss. 706, says: "It is true, as is said by appellant, that a deed is to be construed *ex antecedentibus et consequentibus;* but it is also a settled rule of construction that the meaning or intention of the grantor is not the object sought, but what is the meaning of the words used by him in making the grant. And especially is it a rule of interpretation of a deed that an intention manifested in the recitals of a deed will be controlled by the terms of the granting part of the deed." It being perfectly clear what the meaning of the words in the body of this deed is, it necessarily follows that they must control.

Cross-appellee cites a long list of authorities to sustain the proposition that in conveying land the grantor may except the minerals from the operation of the deed. That point is not an issue in this case. It has never been denied; but our contention, is it must be done in a valid and legal way. The exception can be made in the operating part of the deed and no court has ever denied the right when thus made.

It is further contended by cross-appellant in our original brief that if this so-called reservation or exception is to prevail, it utterly destroys the deed, as the exception is necessarily as broad as the deed and therefore renders the deed absolutely worthless.

Cross-appellee's answer to this proposition is in substance that the exception is not as broad as the deed, and his reason for such assertion is that cross-appellee could mine the gravel on a portion of the land, thereby leaving a large portion untouched.

This is no answer, for the reason that in construing this instrument it is necessary to look at its legal effect and possibilities, and it must be interpreted according to its legal effect. If it has any effect in law at all, it has the effect of permitting cross-appellee to remove the gravel from every foot of the land; and the deed must stand or fall upon the legal rights conveyed thereby, uninfluenced by the manner in which the parties thereto may operate under the deed. If cross-appellant has any right to the surface of this land, he has a right to every foot of it for all time to come. If cross-appellee has any right whatever by this exception, he has a right to mine the gravel upon every foot of the land; and neither party to the transaction can in law be required to subordinate his rights under said deed to the whims or pleasure of the other party.

In answer to this proposition, cross-appellee makes a long quotation from 8 R. C. L. 1094-95, and in this very citation the author says: "In a private deed an exception as large as the grant is void, because such deeds are construed most strongly against the grantor." This is the uniform rule of all the courts and text-writers.

In further answer to this contention, cross-appellee argues that cross-appellant has already had thirty years in which to use this property. The answer to that is, that if he had any right at all, it was a right that continues throughout all time.

Cross-appellee suggests that there might be oil and gas under this land; and if our contention is correct cross-appellee could never bore for his oil. As above stated, boring for oil is a different proposition from mining this gravel, and we will meet the oil boring proposition when we reach it. It is not involved in the present litigation.

SMITH, C. J., delivered the opinion of the court.

The appellant exhibited an original bill in the court be-low against the appellee, alleging that the appellee is the owner of certain land, and that he (the appellant) is the owner of the mineral therein; that the land contains a large amount of gravel which the appellant has the right to remove, but which right the appellee denies and has forbidden him to exercise. The prayer of the bill is for a decree confirming the appellant's title to the mineral in and upon the land and perpetually enjoining the appellee from interfering with his going upon the land and remov-ing the mineral. The appellee's answer by appropriate allegations denies the right of the appellant to the relief sought for two reasons: First, he does not own the min-eral in and upon the land; and, second, the gravel cannot be removed therefrom without destroying the surface of the land. On final hearing a decree was rendered confirm-ing the appellant's title to the mineral in and upon the land, but refusing the injunction prayed for. From this decree the complainant has prosecuted a direct and the defendant a cross-appeal.

The appellant and the appellee both claim under a deed executed by H. T. and J. A. Moss to J. W. Coman, by which the grantors conveyed to Coman the land in question, the description thereof being followed by a general war-ranty clause, the deed then concluding as follows:

"It is hereby understood and agreed by the said J. W. Coman, party of the second part, that the said H. T. Moss and James A. Moss, parties of first part, shall have and own all minerals that may be on the above-described land."

The appellee is now the owner of the land by mesne con-veyances from Coman, and the appellant claims the min-eral therein and thereon by mesne conveyances from the heirs of H. T. and J. A. Moss. The surface of the land is underlaid with gravel of considerable value, is thin, cov-ered with grass, undergrowth, and small trees, and is val-

uable only as pasture land. The gravel cannot be removed from the land without destroying the surface.

Two questions are presented for decision: First, does the appellant own the gravel, and should that question be answered in the affirmative; second, has he the right to remove it when so to do will destroy the surface of the land.

1. One of the appellee's contentions in support of his claim that the appellant does not own the gravel is that the clause in the deed from H. T. and J. A. Moss to Coman, under which the appellant claims to own the gravel, is repugnant to and inconsistent with the prior clause by which the land is conveyed. And he invokes the rule of construction that—"If there be in a deed earlier clauses which are repugnant and inconsistent with the later ones, the former shall prevail."

This well-settled rule is subject to the equally well-settled qualification that an election cannot be made between repugnant and inconsistent clauses "if they can be made to harmonize with the general purpose and scheme of the parties as derived from the whole instrument." *Goosey* v. *Goosey,* 48 Miss 210; *Robinson* v. *Payne,* 58 Miss. 690; *Hart* v. *Gardner,* 74 Miss. 156, 20 So. 877; *Dunbar* v. *Aldrich,* 79 Miss. 698, 31 So. 431; *Massey* v. *Whittaker,* 126 Miss. 99, 88 So. 518. This qualification of the rule controls here, for it is manifest from the face of the deed that the grantors intended thereby, and the legal effect of the language they employed is, to convey the land described therein except all mineral that may be therein or thereon.

The further contention of the appellee that the exception of the mineral in this deed is as large as the grant therein, and therefore void, is without merit; one sufficient reason therefor being that there is no contention that the land is, and in fact it is not, all mineral. The authorities supporting such an exception are legion, and, so far as we are aware, there are none to the contrary. Tiffany on Real Property, pp. 866, 1609, and 1614.

2. Where one person owns the surface of land and another the mineral therein, the owner of the mineral may remove it from the land, but in so doing he must allow sufficient of the subjacent land to remain to support the surface in its natural state. 18 R. C. L. 1245; Tiffany on Real Property, p. 1193. This is admitted by counsel for the appellant, their contentions in this connection being: First, that the appellee's right to subjacent support for the surface of his land does not give him the right to interfere with the mining of the gravel by the appellant, although so to do will destroy the surface of the land, but only to sue the appellant in an action at law for whatever damage he may thereby sustain; and, second, that to refuse the injunction would damage the appellant more than to grant it would injure the appellee.

The first of these contentions invokes a rule applicable when the owner of the surface is seeking an injunction restraining the owner of the mineral from removing it as was the case in *Berkey* v. *Berwind*, 220 Pa. 65, 69 Atl. 329, 16 L. R. A. (N. S.) 851, which is that the owner of the mineral in land will not be enjoined from removing it at the instance of the owner of the surface, but will be remitted to his action at law for damages, unless the injury that would result therefrom to the surface will be irreparable.

"The term 'irreparable' has acquired in the law of injunctions a meaning which, perhaps, is not quite in keeping with the derivation of the word or its literal signification. There are injuries incapable of being repaired which a court of equity does not regard as irreparable. And, on the other hand, there are injuries that may be repaired which it will, nevertheless, treat as irreparable, if the person inflicting or threatening them be insolvent or unable to respond in damages. As ordinarily used the term means that which cannot be repaired, restored, or adequately compensated for in money, or where the compensation cannot be safely measured. . . .

"An injury which tends to the destruction of an estate,

or which is of such a character as to work the destruction of the property as it has been held and enjoyed, will be treated as irreparable." 14 R. C. L. pp. 346 and 347.

The essential features of an "irreparable injury," are:

"(1) That the injury is an act which is a serious change of, or is destructive to, the property it affects either physically or in the character in which it has been held and enjoyed. (2) That the property must have some peculiar quality or use such that its pecuniary value, as estimated by a jury, will not fairly recompense the owner for the loss of it. In the application of this test, however, there are many conflicting decisions. Thus, some courts treat land as *per se* property of peculiar value and will enjoin destructive trespasses to its substance without regard to the question whether, in the particular case, it really does have any peculiar value or not. By these courts it is made a subject for protection by injunction, just as in cases of contract it is a subject for specific performance without reference to its quality, use or value." 5 Pomeroy's Equity, section 495.

This rule is very clearly announced in *Bibby* v. *Bunch*, 176 Ala. 585, 58 So. 916, as follows: "Where a threatened wrong would destroy the substance of the inheritance, ruin the estate, or permanently impair its future use in the manner in which the owner is entitled to use and enjoy it, pecuniary compensation is inadequate, the injury is irreparable at law, and the interference of equity is demanded."

An examination of the decisions of this court will disclose that it has always dealt with land as *per se* property of peculiar value, and as hereinbefore stated the removal of the gravel in the case at bar will destroy the surface of the road, consequently the injury that will thereby be inflicted on the appellee will be irreparable within the meaning of that term as used in the law of injunctions. Moreover, the injury to the surface of the appellee's land will not result from a single act, but from continuous and repeated acts, and the rule is that—"Where trespass to

property is a single act, and is temporary in its nature and effects, so that the legal remedy of an action at law for damages is adequate, equity will not interfere. But if the trespass is continuous in its nature, and repeated acts of trespass are done or threatened, although each of such acts taken by itself may not be destructive or inflict irreparable injury, and the legal remedy may therefore be adequate for each single act, if it stood alone, the entire wrong may be prevented or stopped by injunction." *Warren Mills* v. *New Orleans Seed Co.,* 65 Miss. 391, 4 So. 298, 7 Am. St. Rep. 671; 14 R. C. L. 347.

It thus appears that the appellant would be enjoined at the request of the appellee from removing the gravel, consequently it must necessarily follow that the appellee will not be coerced by equity into permitting the appellant to remove the gravel.

The second rule invoked in this connection by counsel for the appellant, that of comparing or balancing injury, has no application here for two reasons: First, the right of the owner of the surface of land to subjacent support therefor "is without regard to the comparative value of the strata." 18 R. C. L. 1245; *Marvin* v. *Brewster,* 55 N. Y. 538, 14 Am. Rep. 322. Second, the appellee's right to subjacent support for the surface of his land and the threatened breach thereof by the appellant are clear. *Mining Co.* v. *Coal Co.* (D. C.), 253 Fed. 107; 14 R. C. L. 359.

What the appellant requested the court below to do, in the last analysis, was to aid him in the commission of a tort, to-wit, to remove the subjacent support to the surface of the appellee's land, and this a court of equity, of course, will not do.

It follows from the foregoing views that where one person owns the surface of land and another the mineral therein, and the mineral cannot be removed without destroying the surface, the owner of the mineral, in the absence of an agreement to the contrary, is without the right to remove it.

*Affirmed.*