WITHERSPOON, et ux. *v.* CAMPBELL.

Jan. 18, 1954

No. 38871 49 Adv. S. 42 69 So. 2d 384

*John S. Holmes, John B. Loomer,* Yazoo City, for appellants.

*Campbell & Campbell,* Yazoo City, for appellee.

McGᴇʜᴇᴇ, C. J.

On January 21, 1946, the appellee Miss Ruth Campbell, being the owner and in possession of the W½ of NE¼ and all of the NW¼ of Section 12, Township 11, Range 1 West, Yazoo County, Mississippi, less a right of way owned by the Southern Natural Gas Corporation, conveyed the said 240 acres of land to the appellant John Witherspoon, reserving unto herself "all minerals now

owned by me of every kind and nature, both liquid and solid, with the right of ingress and egress, and all necessary rights for the exploration and development of the same; and subject to an oil, gas and mineral lease now of record on ten acres off the west side of the NW¼ of Section 12, Township 11, Range 1 West." This reservation precedes the granting clause which recites that the grantor does "hereby convey and warrant to John Witherspoon the surface rights and all timber lying in, on or growing on said lands in Yazoo County, Mississippi."

Thereafter the said John Witherspoon and his wife moved from the lands which they had formerly owned and sold, onto the lands above described to occupy and cultivate the same as a farm. Subsequently they arranged with the county civil engineer to excavate gravel on a certain hill near their house, to be used by the county for construction of highways. In the progress of the excavation of this gravel there was a cave-in of a bank which resulted in the death of two of the county employees. This tragic accident came to the notice of the appellee, and with the result that she brought this suit to enjoin the appellants John Witherspoon and his wife Irene Witherspoon from joining in any conveyance or otherwise disposing of any of the gravel situated on said land, and a writ of injunction was granted in the final decree appealed from.

Prior to the filing of this suit on November 5, 1951, the appellee is not shown to have exercised any right over the gravel on the land and the appellant had paid the taxes on the land, and there had been no separate assessment of the gravel in favor of the appellee from the date of said conveyance until the filing of this suit.

Under a reserved ruling as to the competency of the testimony in regard to an understanding of the parties as to whether or not the reservation was to include gravel, the complainant testified, in substance, that as a practicing attorney of several years experience, and as owner

of considerable mineral rights in Yazoo County she prepared the deed of conveyance of the 240 acres of land in favor of the said John Witherspoon and received a consideration of $2,400 therefor; that the grantee was not represented by an attorney in the preparation, execution and delivery of the said deed of conveyance; that the grantor knew that there was gravel on the land at the time of the execution of the conveyance, and that to mine the gravel it would have to be done by open pit mining; and that there were then open pit mining operations on other nearby lands in that locality.

The grantor admitted that she knew that it would be necessary to destroy the surface wherever the gravel was mined. She further admitted that she had sand and gravel specifically in mind at the time she executed the deed, although she did not specifically mention gravel either in preparing this deed of conveyance or in preparing the subsequent deed of correction as to a mistake in the range number and in the date of execution and acknowledgment.

The county civil engineer testified as a witness for the appellee that there was a strata of gravel extending from the southwestern part of Yazoo County to the northeastern portion thereof approximately 12 miles in width and that all of the land conveyed by the appellee to the appellant was underlaid with gravel although the outcroppings thereof were not discernible except in a few places on account of the overburden of soil; that at the place where they were excavating the gravel was about 15 feet deep and that they excavated for a length of about 100 to 125 feet at that place; that to remove gravel from said land it was necessary to cut down into the gravel and leave an open pit after removing the overburden of soil. He was asked: "Q. That does destroy the value of the land for agricultural purposes, doesn't it? A. Yes, sir." That although they had excavated gravel at the place mentioned they had not removed any of it from

the land. The trial court excluded that part of the testimony which had particular reference to the alleged conversations had between the grantor and the grantee in the deed on the occasion of the execution thereof; decreed the grantor in the deed to be the owner "of all minerals of every kind and character, both liquid and solid, inclusive of gravel in, on, or under" the lands described in the deed; and enjoined the grantee and his wife from mining, selling, conveying, disposing of or removing said gravel.

 It seems to be well settled in most jurisdictions that in determining the meaning of a conveyance or reservation of minerals, regard may be had not only of the language of the deed, but also to the situation of the parties, the business in which they were engaged and the substance of the transaction. 36 Am. Jur., Mines and Minerals, Sec. 31, page 302; Ib. Sec. 35, page 305; 58 C. J. S., Mines and Minerals, Sec. 155, page 322, where the latter text also states that: "In doubtful cases, the meaning of the word 'minerals' will be restricted to that given by the custom of the country in which the deed is to operate."

Considering the situation of the parties in the instant case, the business in which they were engaged and the substance of the transaction, it should be stated that the grantor was not engaged in construction work of any kind that would render of any use to her the strata of gravel which underlaid this tract of land, and that any attempt on her part to utilize the same would result in the destruction or great impairment of the surface rights which she was conveying to the grantee in the deed of the land to him for farming purposes, and that since the first oil field in this state had been discovered in the county where this land is situated, five years prior to the execution of this deed of conveyance, the custom in the county where the deed was to operate was necessarily that of dealing in minerals as being oil, gas and other

like minerals as distinguished from sand and gravel where no specific mention of the latter is made in a conveyance, and that since the grantor was likewise the attorney who prepared both the original and the correction deed which made no specific mention of sand and gravel, the conveyance should be construed most strongly against her, after the exclusion of incompetent oral testimony at the trial in regard to the alleged conversations had between the grantor and the grantee as to what was to be included in the deed.

It also seems to be generally recognized that the word "minerals" has no definite and certain meaning that can be attributed to it in all cases. Thompson on Real Property, Vol. 1, page 87; 1 A. L. R. 2d, Anno. beginning at page 787. And this view is also supported by the text on Mines and Minerals in 36 Am. Jur. and 58 C. J. S. hereinbefore cited.

In 58 C. J. S., Sec. 155, page 324, it is stated: "Sand and gravel ordinarily are not included within a grant or reservation of minerals or of mineral royalty, although there is on the land involved sand and gravel susceptible of commercial production and use." In support of the foregoing statement there is cited the cases of Holloway Gravel Co. v. McKowen, 200 La. 917, 9 So. 2d 228; State, ex rel. Commissioners of Land Office v. Hendrix, 196 Okla. 596, 167 P. 2d 43; Winsett v. Watson, C. A. Texas, 206 S. W. 2d 656; and Psencik v. Wessels, C. A. Texas, 205 S. W. 2d 658.

In the case of Psencik v. Wessels, supra, a deed of conveyance from the grantor to her sister contained the following reservation: "Out of the grant hereby made there is, however, excepted and reserved to Millie Psencik, grantor herein, her heirs and assigns for a period of thirty (30) years from and after this date a half interest in and to all mines and wells of, and all minerals of whatever description, be the same gaseous, liquid, or solid, in and under the lands hereinabove described.

. . ." The deed then provided that the grantor "has the right and power to take all usual, necessary and convenient means of working, getting, drilling for, laying up, dressing, making merchantable and taking away said minerals. . . ."

Thus it will be seen that the reservation in the conveyance involved in the case last above mentioned undertook to cover both liquid and solid minerals as in the case at bar, but the Texas court in its opinion stated: "We have reached the conclusion that sand and gravel was not included in the reservation, which we base upon the following considerations: 'While the word "minerals" includes, in a technical sense, all natural inorganic substances forming a part of the soil, the term is used in so many senses, dependent upon the context, that such a definition is obviously too broad, for it would throw little, if any, light upon what was meant in a particular case. So, to apply the word in the signification in which it is employed in the scientific division of all matter into the traditional three kingdoms, to a grant of land containing an exception of the minerals, would be absurd, since all land belongs to the mineral kingdom, and the exception could not be given effect without destroying the grant.' 36 Am. Jur., p. 283."

The Court further stated in its opinion that "it is a matter of common knowledge that where those subjects (sand and gravel) are dealt with they are referred to specifically (e. g. see Gantt v. McClellan, Tex. Civ. App., 252 S. W. 229, 233, error refused) and that in the common vernacular of those dealing in farm lands and mineral rights the term 'minerals' does not include ordinary commercial gravel. It might as well be held to include fertile top soil, which, under conditions arising subsequently to the grant, should become commercially valuable for replenishing lawns in an adjacent city, or other soil for filling lots or building roads. It would serve no useful purpose to analyze the specific pro-

visions of the reservation in question. Its terms do not indicate or suggest that sand or gravel is included.''

In the case of Moss v. Jourdan, 129 Miss. 598, 92 So. 689, the conveyance contained the following reservation: ''It is hereby understood and agreed by the said J. W. Coman (the predecessor in title of Jourdan) party of the second part, that the said H. T. Moss and James A. Moss, parties of the first part, shall have and own all minerals that may be on the above described land.'' The Court held that ''all minerals'' included the gravel on the land, after stating the respective and opposite contentions of the appellant and the appellee in regard to the ownership thereof, and it confirmed the title of the appellant to the gravel as being included in the reservation of ''all minerals,'' but declined to enjoin the appellee as landowner from interfering with the appellant in the excavation and removal of the gravel from said land, upon the theory that the gravel could not be removed without destroying the surface, and that the owner of the gravel, in the absence of an agreement to the contrary, was without the right to remove it.

 Since the discovery of oil and gas in commercial quantities in this state it is a matter of common knowledge that most grantors and purchasers of minerals in place, as well as the sellers of land under a reservation of ''all minerals'' on the land, ordinarily have had in mind oil, gas and other minerals (of like kind and character) in the purchase and sale of minerals in place, and this is also true in purchasing land with a reservation of the minerals; that gravel is not usually bought and sold under the designation of ''solid'' minerals, without a more definite and specific mention being made of what is being purchased and sold; and it is also true, generally speaking, that it is not now within the contemplation of the parties in selling or purchasing ''all the minerals'' in place underneath a tract of land, that the purchaser shall have the right by open pit mining

to either destroy or greatly impair the value of the land by the excavation or removal of gravel therefrom, nor that a landowner must account to his vendor of the land under a reservation of the minerals, or to his vendee of all or a part of the minerals, for any part of the value of any gravel that such landowner may remove or cause to be removed from the land.

Of course, the ordinary oil and gas lease refers to the minerals that are to be explored for as being "oil, gas and other minerals," and under the doctrine of *e jusdem generis* the words "and other minerals" have reference to other minerals of like kind and character which are not a part of the soil, such as the oil and gas specifically mentioned. It is perhaps true that most conveyances of minerals or a fractional portion thereof, when being sold by a landowner are described either as all or a certain fractional portion of the oil, gas and other minerals underneath the land. But a great many of the landowners of this state sell their minerals in place by describing them as "all of the minerals" underneath a designated tract of land, or a certain undivided interest in all of the minerals thereunder, without any thought of having to ever account to his vendee for all or any portion of the gravel that he as landowner may thereafter cause to be excavated and removed from the land. Likewise many purchasers of land throughout this state where the grantors reserve all or a part of the "minerals" do not contemplate that they may thereafter be required to account to their vendors for all or any portion of the gravel that may be removed from the land. We, therefore, think that it is clearly to the public interest, and a matter of fairness to a great majority of the landowners of this state and future purchasers of land, that if the term "minerals" is to include all of the gravel on the land the conveyance should specifically so declare.

The case of Moss v. Jourdan, supra, was decided in 1922, which was several years prior to the discovery of the Tinsley Oil Field in Yazoo County in 1939 and was decided at a time when it was wholly unknown as to whether or not there existed any oil, gas or other like minerals in this state. The grantors and the grantee in the deed involved in that case doubtless had only sand and gravel in mind when the reservation of all minerals was placed in that deed. It was during the period when sand and gravel were much in demand for the construction of graveled highways. Conditions have greatly changed since that time and the grantors and grantees of land and minerals have been oil and gas conscious in the execution of conveyances and reservations of minerals since the discovery of oil and gas in this state and have not dealt in the sale or reservation of sand and gravel except where the same had been specifically designated in conveyances or reservations thereof.

A decision of this Court now holding that the rule announced in Moss v. Jourdan, supra, is applicable to all conveyances and reservations of "minerals" that have been executed throughout the state since the discovery of the Tinsley Oil Field in Yazoo County and the resultant activity in other parts of the state for the discovery of oil and gas thereafter engaged in would be indeed far-reaching, and would bring about a result not intended by either the grantors or grantees in the conveyance or reservation of "all minerals" or any fractional part thereof and would be detrimental to the general welfare. It is well known that since the discovery of oil and gas fields in this state those who have either sold or purchased sand and gravel for construction purposes have caused the same to be described as such in the deeds of conveyance and that this is likewise true as to reservations intended to include sand and gravel as distinguished from oil, gas and other like minerals.

We have, therefore, concluded that the case of Moss v. Jourdan, supra, should be and the same is hereby expressly overruled, and that the rule of property thereby established should not be applied to any conveyances or reservations of "minerals" that were executed under the changed conditions brought about by the discovery of oil and gas in this state, since to apply such rule to those conveyances or reservations would be manifestly contrary to the intention of the parties to such conveyances or reservations in the absence of a specific designation of sand and gravel as being intended to be conveyed or reserved.

We, therefore, hold that the Chancellor was correct in excluding the oral testimony as to the alleged conversations between the grantor and the grantee in the instant case as to whether or not sand or gravel was intended to be reserved, and that when the conveyance is construed most strongly against the grantor who prepared the conveyance, then the sand or gravel should not be deemed to have been included in the reservation here involved; that it was competent for the trial court to consider the testimony as to the situation of the parties, the business in which they were engaged and the substance of the transaction, the custom of the country where the deed was to operate, and that in so doing it should have been held that the reservation did not include the sand or gravel on the land conveyed to the appellant; and that therefore it was error to have granted the injunction in favor of the grantor whereby the grantee was enjoined from disposing of the same. The cause is, therefore, reversed and the bill of complaint is dismissed.

Reversed and judgment here for the appellant.

All justices concur except *Holmes, J.,* who took no part in the decision.