185 So.2d 388

Walter L. HARPER

v.

TALLADEGA COUNTY.

7 Div. 644.

Supreme Court of Alabama.

April 15, 1966.

Fred Blanton, Birmingham, for appellant.

Stringer & Montgomery, Talladega, for appellee.

COLEMAN, Justice.

In an action for trespass to land, or more accurately, trespass to mineral rights in land, the court sustained a demurrer to the complaint. Plaintiff took a voluntary nonsuit and appealed.

The complaint claims "for a trespass by the defendant on the following tract of land, viz:" (Description Omitted.) "the mineral rights thereunto belonging to the plaintiff, and for digging and removing sand and gravel from Tallascehatche (sic) Creek bottoms located in the aforesaid described tract of land . . . ."

"The plaintiff further avers that the plaintiff . . . . did file an itemized statement of the claim, the basis of this suit, against the defendant, Talladega County . . . . That a copy of said claim is hereto attached and made a part of this complaint . . . ."

"That . . . . said claim was denied

. . . .

" . . . . . . . .

"Plaintiff avers the mineral rights only in the above property were granted to his predecessor in title by the following language, viz:

" 'All the coal, iron ore, and other minerals in, under and upon', the said property."

The claim filed against Talladega County asserts plaintiff's demand for payment for "24,000 yards of sand and gravel at 5 cents a yard," and recites that "said sand and gravel was utilized by said Talladega County . . . . in and about the construction and/or maintenance and/or repair of roads . . . ."

The judgment of the trial court recites:

"This day came the parties by and through their attorneys and submitted said cause for ruling on the demurrers of the Defendant to the complaint as last amended, and having stipulated and agreed that the only issue raised by said demurrer is as follows:

"Are common mixed sand and gravel, minerals within the meaning of a mineral grant conveying 'all the coal, iron ore, and other minerals in and under the following lands situated in the State of Alabama, Talladega County, to-wit:' . . . ."

█ The court decided that the question should be answered in the negative. We agree.

Citations of cases deciding what substances are minerals may be found at 17 A.L.R. 156; 86 A.L.R. 983; 1 A.L.R.2d 787, and 95 A.L.R.2d 843. We have examined fifteen decisions which were concerned with the question whether sand or gravel was included in a grant or reservation of minerals. Two of these decisions lend support to plaintiff's contention that sand and gravel are included in the grant to his predecessor in title.

One of these two cases is United States ex rel. and for Use of Tennessee Valley Authority v. Harris, 5 Cir., 115 F.2d 343, wherein the court, in a condemnation proceeding, fixed the value of mineral rights in 42.9 acres of land in Colbert County, Alabama. The commission awarded the owners $300.00. Two of three district judges increased the amount to $500.00, but the appellate court cut the award to one dollar per acre, thus making a total of $42.90. The opinion recites that:

". . . . The appellees stipulate that 'the sand and gravel upon in and under said land constituted all the mineral interest and that there was no other mineral in upon and under said land.' " (115 F.2d, at page 344)

█ We understand that when the parties stipulate that certain facts exist, no issue is raised as to the stipulated facts and the question whether the stipulated matter is true is not contested and is not decided by the court but is merely taken as true. Thus we are not persuaded that the court considered or decided whether sand and gravel were included in the mineral grants in the *Harris* case, and, if the question was not considered, then the case cannot be authority one way or the other.

It is true that it is said in the opinion that the term "minerals" is not limited to metallic substances and that the meaning of the term is to be ascertained from the language of the grant or reservation, the surrounding circumstances, and the intention of the grantor, if it can be ascertained, and for authority, the court cites among other cases, McCombs v. Stephenson, 154 Ala. 109, 44 So. 867.

In the *McCombs* case, this court decided that a grant of minerals included "shale," a kind of stone which was in layers and which defendant was getting out using dynamite and other means, from the top, and grinding up and manufacturing into brick. This court noted a definition that by the term "minerals" are meant all substances in the

earth's crust which are removed by man for the substance in itself and that the term is not limited to metallic substances. The court said that in the conveyance there under consideration, in the absence of qualifying words showing a contrary intent, the conveyance "included the shale in question." The court also noted that a deed should be construed most strongly against the grantor, and observed that the testimony of an expert as to the meaning of the word "minerals" was admitted without error, that his testimony did not differ from the definitions in the books, and he was competent to testify whether the shale in question was a mineral.

We are not persuaded, however, that either *Harris* or *McCombs* should govern our decision in the instant case. Whether a grant or reservation of minerals includes sand and gravel was not decided in either case. In *Harris* the parties stipulated and, we think, agreed that sand and gravel were minerals. In *McCombs*, sand and gravel were not the items considered.

The second case lending support to plaintiff is *Moss* v. Jourdan, 129 Miss. 598, 92 So. 689, where the court decided that a reservation of "all minerals" included gravel. The court further held, however, that the owner of the surface would not be enjoined from interfering with the removal of the gravel by its owner because the mineral owner must allow the subjacent land to remain in support of the surface in its natural state. The *Moss* case has been expressly overruled in Witherspoon v. Campbell, 219 Miss. 640, 69 So.2d 384, where the court said that the rule of property established in *Moss* should not be applied to conveyances of minerals executed under changed conditions resulting from discovery of oil and gas in Mississippi. The court held that the rule in *Moss* would be manifestly contrary to the intention of the parties in the later conveyances in the absence of a specific designation of sand and gravel as being intended to be conveyed or reserved.

The *Moss* case, of course, did not establish a rule of property in Alabama. Since *Moss* has been overruled by the court which decided it, we are not persuaded that we should follow it in the instant case when the question is presented to this court for the first time so far as we have been able to ascertain.

We come now to the cases where the court decided sand and gravel were not included in the term "minerals." Most of the courts recognize that:

"In the broadest sense, as belonging to one of the three great divisions of matter —animal, vegetable, and mineral—sand, of course, is a mineral. In the more restricted scientific sense, sand may or may not be a mineral, according to what it is composed of. In the language of mineralogists, air and water are minerals, while granite and similar rocks are not minerals, but aggregations of minerals. So it is of sand. It may be wholly of grains of silex or other mineral, or it may be of several mixed together, and therefore in the technical sense only grains of rock." Hendler v. Lehigh Valley R. Company, 209 Pa. 256, 259, 58 A. 486, 487, 103 Am.St.Rep. 1005.

What was said of common sand is also true of common gravel. In holding that commercial gravel is not patentable as a placer mineral under the mining laws, one court said:

"It is true that commercial gravel belongs to the mineral kingdom in that it is inorganic and that it is formed by nature alone. But there is an important distinction between it and any of the so-called minerals as recognized by the authorities. Practically speaking, all the definitions of the word 'mineral' agree that such a substance must always have a definite chemical composition by which it can be easily recognized, in whatever part of the earth it may be found. There can be no such uniformity in the chemical content of gravel deposits, for the reason that this depends entirely upon the

character of the mineral deposits which have contributed to their formation. And upon the character, quantity, and proximity of the minerals to the gravel deposit, their susceptibility to erosion, the violence with which the erosion is accompanied, the duration of the eroding process, as well as various other facts, depends the size of the pebbles and the quality of the deposit as commercial gravel. There is nothing constant in the character of commercial gravel by which to identify it as a mineral, except that it consists of broken fragments of rock mingled with finer material, such as sand and clay. Nothing definite can be said of its chemical composition as can be said of the minerals. Commercial gravel is simply a jumbled mass of fragments of various minerals (rocks). Science, at least, cannot accept as a distinct subdivision of the mineral kingdom any substance whose character and attributes are so composite and fluctuating. It is true that beds of sandstone and limestone may possibly owe their origin in some instances to deposits of ordinary gravel. (Barringer and Adams on The Law of Mines and Mining in the United States; Enc. Brit., 11th ed., Title 'Gravel.') But commercial gravel has not yet reached that stage. So far as scientific classification goes, then, commercial gravel cannot be considered as a mineral." United States of America v. Aitken, 25 Phil. 7, 14, 15.

Another court held that a taxpayer was not due a refund of tax paid on gasoline used to operate machinery at a gravel pit. The law authorized a refund for tax paid on gasoline used in mining, but the court held that digging gravel from a gravel pit was not mining because commercial gravel is not a mineral. Lillington Stone Co. v. Maxwell, 203 N.C. 151, 165 S.E. 351.

In Steinman Development Co. v. W. M. Ritter Lumber Co., D.C., 290 F. 832, 839, the court said:

"The deed to Steinman grants him all the coal, iron ore and *all other minerals,* and fire clay in, under, and upon the land in controversy. The rule of ejusdem generis forbids that 'other minerals' be construed as meaning all the sand, rock, shale, water, and earth to be found on the premises. Marketable minerals of comparatively high value, like coal, iron ore, and fire clay, if any, were I think alone intended to be granted. . . . ."

The Illinois court said:

". . . . The granting clause of the deed conveys only the coal, 'together with right to mine the same,' and the quitclaim clause of "all minerals of every description' underlying the land described cannot reasonably be construed to embrace minerals other than such as could be removed by mining operations underground, which would not destroy the surface for agricultural purposes. It is altogether reasonable to presume that Cowey and his grantee had no thought of limestone, sand and gravel as minerals. They knew those were on or near the surface and were of an entirely different nature from coal and oil,—the minerals specifically mentioned in the deed and which could be mined by underground methods. . . . ." Kinder v. La Salle County Carbon Coal Co., 310 Ill. 126, 134, 135, 141 N.E. 537, 540.

The Texas Court has held that sand and gravel were not included in a grant of "all the oil, gas and other minerals." Praeletorian Diamond Oil Ass'n v. Garvey (Tex. Civ.App.), 15 S.W.2d 698; Shell Petroleum Corp. v. Liberty Gravel & Sand Co. (Tex. Civ.App.), 128 S.W.2d 471; Winsett v. Watson (Tex.Civ.App.), 206 S.W.2d 656.

The Supreme Court of Oklahoma decided in 1945 that reservation of "mineral royalty" did not include the right to take sand and gravel, Beck v. Harvey, 196 Okl. 270, 164 P.2d 399; and that grant of "all of the oil, petroleum, gas, coal, asphalt and all

other minerals of every kind or character" did not convey gravel. State ex rel. Com'rs of Land Office v. Hendrix, 196 Okl. 596, 167 P.2d 43.

The English court has held that a reservation of minerals out of a grant does not include sand and gravel for two principal reasons: first, because the word, minerals, so used means substances exceptional in use, in value, and in character, such as china clay, and does not mean the ordinary soil which, if reserved would practically swallow up the grant; and, second, the test is what the word, minerals, means in the vernacular of the mining world, of the commercial world, and of landowners at the time of the grant, and whether the particular substance was so regarded as a mineral. Waring v. Foden, (1932), 1 Ch. 276, 86 A.L.R. 969.

To like effect is the holding in Staples v. Young, (1908), 1 Ir.R. 135.

██ A well settled rule is that, in considering the sufficiency of the averments of a complaint on demurrer, the court must assume that the pleader has stated his cause as favorably as the case will justify and those averments will not be aided by implications or intendments but these will be resolved against him. Cauble v. Boy Scouts of America, 250 Ala. 152, 33 So.2d 461. We must assume that plaintiff here has alleged all facts which support his contention that common sand and gravel were included in the grant under which plaintiff claims.

██ We think we are justified in taking notice that, as matter of common knowledge, in this state sand and gravel used for road building and repair are obtained from open pits and in the process of removing

the sand and gravel, the surface is destroyed. To uphold plaintiff's claim, we would be compelled to hold that plaintiff's grantor, in conveying "all the coal, iron ore, and other minerals" intended to convey the land itself. We do not think that we can say that such is the meaning of the language employed, whether the language be regarded as that of landowners or of the mining or commercial world.

Like the Mississippi Court, we are of opinion that, in this state, landowners who execute leases and conveyances of "oil, gas, and other minerals," or of "coal, iron ore, and other minerals," under a tract of land, do so without any thought of having to account to the vendee for all or any part of the gravel or sand that the landowner may thereafter excavate and remove from the land; and, likewise purchasers under conveyances in which the grantors reserve all such minerals do not contemplate that they may be required thereafter to account to their vendors for common sand or gravel that may be removed from the land. We are of opinion that the rule in this state is correctly declared as follows:

". . . . We, therefore, think that it is clearly to the public interest, and a matter of fairness to a great majority of the landowners of this state and future purchasers of land, that if the term 'minerals' is to include all of the gravel on the land the conveyance should specifically so declare." Witherspoon v. Campbell, 219 Miss. 640, 69 So.2d 384, 388.

The judgment appealed from is in accord with this rule and is due to be affirmed.

Affirmed.

LIVINGSTON, C. J., and LAWSON and GOODWYN, JJ., concur.