Appellee, Bessie Randall, conveyed certain real property by deed in 1951 and reserved therein "an undivided one-half of the usual one-eighth royalty interest in and to any and all gas, oil, sulphur, clay, gravel or other minerals from said land." Through a series of mesne conveyances appellant, W.S. Newell, Inc., became the owner of the land in question. Appellant, a corporation engaged in road construction, removed 530,000 cubic yards of soil from the property for use as fill dirt in the construction of Interstate 10.
Appellee successfully brought suit against appellant for royalties reserved to her under the 1951 deed for the removal of the soil. The trial court, hearing the evidence ore tenus, held that the soil was removed from the land previously owned by appellee and subject to the reservation of the mineral right. The court awarded appellee forty-five cents per cubic yard. Appellee's one-sixteenth interest amounted to the sum of $14,906.25.
Appellee acquired the property in question in a conveyance from her mother and stepfather on January 4, 1945. The deed described the property as follows: "Land commencing 256 feet South of the Northeast corner of the SW 1/4 of the NW 1/4 of Section 33, Township 5 South, Range 4 West and runs South 532 feet and being 1,111 feet deep and containing 13 1/2 acres." On December 3, 1951, she conveyed the property to Charles Mason and reserved her mineral interest. Charles Mason and his wife conveyed the property to Burnham and Hazel Lynd on April 18, 1953.
On October 25, 1975, Mr. and Mrs. Lynd conveyed the property as part of a larger tract of land to appellant, W.S. Newell, Inc. The deed described the property as situated in Section 33,Township 6 South, Range 4 West. The prior deeds had incorrectly described the property as being in Section 33, Township 5South. Appellant took possession of the property and began removing soil, but did not pay appellee any royalty for the soil removed. Appellee subsequently brought suit and obtained the judgment from which this appeal is taken.
Appellant contends that the trial court erred in finding that the soil removed was within the reservation of "any and all gas, oil, sulphur, clay, gravel or other minerals."
There is no general definition in the cases of the term "mineral," Cole v. McDonald, 236 Miss. 168, 109 So.2d 628
(1959), and in determining what is included within a reservation or grant of minerals, it is commonly stated that the meaning of the term is to be ascertained from the language of the instrument and the surrounding circumstances evidencing the intention of the parties. See United States ex rel.Tennessee Valley Authority v. Harris, 115 F.2d 343 (5th Cir. 1940) (applying Alabama law); Vang v. Mount, 300 Minn. 393,220 N.W.2d 498 (1974). However, it has been established that sand, gravel, and clay are not ordinarily considered minerals unless a contrary intention is manifested or unless the substance has some special value. Harper v. Talladega County, 279 Ala. 365,185 So.2d 388 (1966); Hendler v. Lehigh Valley R., 209 Pa. 256,58 A. 486 (1904); 54 Am.Jur.2d Mines and Minerals § 8.
In Harper v. Talladega County, supra, this court held that common mixed sand and gravel were not within the meaning of a mineral grant conveying "all the coal, iron *Page 1070 
ore, and other minerals" in and under the land in question. The sand and gravel were used in the construction, maintenance, and repair of roads. The court relying upon Witherspoon v.Campbell, 219 Miss. 640, 69 So.2d 384 (1954), noted that purchasers ordinarily do not contemplate that they may be required to account to their vendors for common sand and gravel that may be removed from the land; therefore, the court concluded that if the term "mineral" is to include all of the sand and gravel on the land the conveyance should specifically so declare. Additionally, the court in Harper, following the English case of Waring v. Foden, 1 Ch. 276 (1932), stated that to uphold plaintiff's claim to the substances removed would result not in a conveyance of mineral rights, but in a conveyance of the land itself:
 We think we are justified in taking notice that, as matter of common knowledge, in this state sand and gravel used for road building and repair are obtained from open pits and in the process of removing the sand and gravel, the surface is destroyed. To uphold plaintiff's claim, we would be compelled to hold that plaintiff's grantor, in conveying "all the coal, iron ore, and other minerals" intended to convey the land itself. We do not think that we can say that such is the meaning of the language employed, whether the language be regarded as that of landowners or of the mining or commercial world.
279 Ala. at 370, 185 So.2d at 393. See also Farrell v. Sayre,129 Colo. 368, 270 P.2d 190 (1954); Hendler v. Lehigh ValleyR., supra.
In this case, the soil was established by expert testimony as being mostly sand with small percentages of clay and even smaller percentages of silt. Mr. Sherwood Brown, called as an expert by Bessie Randall, stated the following:
 Q. Would you describe the quality of soil removed from this pit?
. . . . .
 A. The soil varied from light sandy top soil with organics in the surface of the ground. . . . But the rest of the soil, the major portion of the soil was what is known as good quality sand clay having eight to fifteen to sixteen percent clay and the rest of it sand and it was the sand that binds the clay and makes it permissible to use for Alabama and Mississippi highway road surfacing under the asphalt.
Another of appellee's experts, Mr. James E. Laier, testified that the material was primarily sand. He stated: "The soils we examined from this location was primarily sands with a small fraction of silt or clay mixed with the sand." Neither expert witness testified that the material had any special value.
The reservation in this case did not include sand. Moreover, there is no other evidence as to the circumstances surrounding the conveyance from Bessie Randall to show whether the soil extracted was within the contemplation of the parties to the 1951 deed. Although Bessie Randall testified she intended to reserve an interest in such soil, there is no evidence other than her own testimony to evidence her intentions or expectations at the time of reserving the mineral interest. Self-serving testimony regarding unexpressed subjective intentions of the grantor cannot be considered, but other evidence bearing on the intent of the parties may be received,Vang v. Mount, supra. Nor was there any evidence of surrounding circumstances evidencing the parties' intent to include the soil extracted within the reservation. Furthermore, some 530,000 cubic yards of soil was removed. Appellant, in effect, extracted ordinary soil to use as fill dirt in the interstate project. To hold that the soil was within the reservation to Bessie Randall would, in effect, reserve the land itself to her, something she purportedly divested herself of in the 1951 deed. Although there is no precise definition of the term "mineral," it necessarily implies a substance rare and exceptional in character possessing special value — something other than the soil itself.
Therefore, we conclude that the soil in this case was not included within the *Page 1071 
reserved mineral rights, the doctrine of ejusdem generis notwithstanding, and the case must be reversed. In view of our decision on this issue, it is unnecessary to consider appellant's other contentions.
REVERSED AND REMANDED.
BLOODWORTH, FAULKNER, ALMON and EMBRY, JJ., concur.