SINGER, et al. *v.* TATUM, et al.

No. 43258 January 25, 1965 171 So. 2d 134

*Satterfield, Shell, Williams & Buford,* Jackson, for appellants.

*Simrall, Aultman & Pope,* Hattiesburg; *Green, Green & Chaney,* Jackson, for appellees.

BRADY, TOM P., J.

This is an appeal from a decree of the Chancery Court of Lamar County, Mississippi adjudicating the appellees to be the owners of certain minerals other than hydrocarbons under 8,875.75 acres in Lamar County, Mississippi. From this decree this appeal is prosecuted.

On December 19, 1962 the appellees, complainants below, W. S. Tatum, and other members and heirs of the Tatum family, filed a bill in the Chancery Court of Lamar County, Mississippi for said confirmation and to determine whether the mineral exceptions and reservations in a certain deed executed under the authority of

the District Court of the Parish of Orleans, Louisiana on December 30, 1937 by Hibernia Bank & Trust Company, in Liquidation, though its special agent and liquidator, to W. S. F. Tatum included sulphur, salt and other minerals as well as hydrocarbons, in the particular acreage. This area is commonly known as the Tatum Salt Dome, where much interest has centered because of the activity of the Federal Government in 1964 in the preparation and exploding of an underground atomic blast.

The bill to confirm the title to the minerals was brought against Joe B. Singer, R. H. Fleischaker, and other members of these families, together with Singer-Fleischaker Royalty Company, a copartnership, all of the state of Oklahoma; Investors Royalty Company, a Delaware corporation domiciled in Oklahoma; Humble Oil & Refining Company, a Delaware corporation; Delhi-Taylor Oil Corporation, a Delaware corporation, each of which has the C T Corporation System of Jackson, Mississippi as agent for service of process; James S. Attaya, Allen C. Barton, Jess Bohon, resident citizens of Mississippi; Ruben W. Myronne, Jr., of Louisiana; and all persons having or claiming any adverse right, title or interest in the property involved, namely, all minerals and mineral rights with right of exploration, development, production, storage and disposition under subject lands in Lamar County, Mississippi, except the oil, gas and other hydrocarbon minerals therein as reserved in a certain deed dated December 30, 1937 from Hibernia Bank & Trust Company, in Liquidation, to W. S. F. Tatum of Hattiesburg, Forrest County, Mississippi, recorded in Book GG, page 515, in the office of the Chancery Clerk of Lamar County, Mississippi; unknown parties in interest, and unknown defendants, all hereinafter designated as defendants.

The Hibernia Bank & Trust Company of New Orleans, Louisiana owned the lands in question and all parties

to this suit claim from the title of Hibernia Bank & Trust Company.

The decree adjudicated that the complainants below, appellees here, were the owners of sulphur, salt, and any and all minerals other than hydrocarbons in, on or under the lands involved in the exception or reservation of the deed from Hibernia Bank & Trust Company to W. S. F. Tatum, through whom the complainants below, appellees here, claim. This appeal is prosecuted by the appellants, who maintain that all minerals, including salt and sulphur, and any minerals as well as hydrocarbons, were retained by the Hibernia Bank & Trust Company, in Liquidation, hereinafter called Hibernia, under the exception or reservation in its deed to W. S. F. Tatum. The appellants likewise acquired title from the same grantor, Hibernia.

Five assignments of error are urged by the appellants, the gravamen of which is that the chancery court erred in not recognizing the Louisiana District Court orders as controlling in the construction of the deed in question, and it also erred in adjudging the appellees, and not the appellants, to be the owners of the minerals and mineral rights in the lands involved, other than hydrocarbons.

The pertinent facts, in chronological order, as briefly as possible, are as follows:

On December 30, 1937 a deed was given by Hibernia, in Liquidation, to W. S. F. Tatum. The parts of the deed relevant to this suit are these: Title is warranted to W. S. F. Tatum to certain tracts of land situated in Lamar County totaling 21,433.51 acres, including everything of value thereon, therein, or appertaining thereto, (except: (a) Certain mineral reservations; (b) certain sixteenth section land leasehold and limitations of timber ownership thereon, as hereinafter disclosed) to-wit: Freehold lands hereby conveyed in Lamar County, Mississippi, Township 1 North, Range 14 West:

. . .

Township 1 North, Range 15 West:

. . .

Township 2 North, Range 15 West:

. . .

Leasehold Lands and Limited Ownership of Timber or Things of Value Thereon:
 In Township 1 North, Range 15 West
 Section 16: Entire West Half
 In Township 2 North, Range 15 West
 Section 16: Entire
 (Limited to unexpired term of 99 years)

. . .

Township 1 North, Range 16 West (Mineral Rights Reserved.)

. . .

Township 2 North, Range 16 West (Mineral Rights Reserved.)

. . .

"THE GRANTOR HEREIN Reserves unto itself, its agents or assigns, the oil, mineral, gas, and petroleum, on, in, or beneath all the lands herein conveyed which are situated in Township One North, Range Sixteen West, and in Township Two North, Range Sixteen West, in Lamar County, Mississippi; and the oil, mineral, gas, and petroleum, rights and ownership so reserved by this conveyance are restricted solely to the lands herein conveyed in said Townships One and Two North, Range Sixteen West, Lamar County, Mississippi. The grantor, on behalf of itself, its agents or assigns, hereby reserve the usual and customary rights of ingress and egress, over, across, and upon said lands so situated in Township One and Township Two North, Range Sixteen West, for the purpose of mining, boring, or making other explorations thereon and removing therefrom such oil, mineral, gas, and petroleum, as may be found, — responsive, however, for such actual damages as may be

caused by the grantor, its agent or assigns, in pursuit of such work upon said lands, to fences, buildings, crops, and merchantable timber thereon.

"ALSO, the aforesaid HIBERNIA BANK & TRUST COMPANY, IN LIQUIDATION — grantor herein, does further hereby sell, convey, warrant, transfer and deliver, unto the aforesaid grantee herein — W. S. F. Tatum of Hattiesburg, Mississippi, the following described lands and property, including everything of value thereon, therein, or pertaining thereto, to-wit:

"FREEHOLD LANDS HEREBY CONVEYED IN LAMAR COUNTY, MISSISSIPPI

"TOWNSHIP 1 NORTH, RANGE 14 WEST:

Section 11: Northwest Quarter of Southwest Quarter (NW¼ of SW¼) less twenty (20) acres square — being Northwest part thereof.
20 Acres

"TOWNSHIP 1 NORTH, RANGE 15 WEST:

Section 13: East Half of Northwest Quarter (E½ of NW¼) less a strip of land ninety-nine (99) feet wide off north end thereof.
77 Acres

| | |
|---|---|
| Total | 97 Acres |
| Grand Total _____ | 21,435.51 Acres |

"IT IS THE MUTUAL COVENANTS, PURPOSE AND INTENT, of all parties hereto or interested herein — whether identified as individual, trust, fiduciary, beneficiary, or corporate — that by this warranty and muniment of title the hereinabove described lands, including everything of value thereon, thereunder, or pertaining thereto, (except as to mineral reservations re lands hereby conveyed in Township One North, and Township Two North, Range Sixteen West, and subject to limitations re leasehold lands and timber ownership

rights re lands in Section Sixteen, Township One North, Range Fifteen West, and Section Sixteen, Township Two North, Range Fifteen West, as hereinabove disclosed and specified), are hereby conveyed and delivered to and conferred upon the grantee, W. S. F. Tatum of Hattiesburg, Mississippi, — by the grantor and/or grantors herein, to be received, held, and possessed, by the said grantee, his heirs and assigns, in fee simple forever.

"IN WITNESS WHEREOF, the HIBERNIA BANK & TRUST COMPANY, IN LIQUIDATION, herein represented by R. N. SIMS, Special Agent of and for J. S. BROCK, State Bank Commissioner for the State of Louisiana, and J. EDWARD McGUIRE, Liquidator, hereunto duly authorized, have caused this instrument and muniment of title to be executed and delivered in the name of and for and on behalf of their said trust — HIBERNIA BANK & TRUST COMPANY, IN LIQUIDATION, this the 30th day of December, 1937.

"HIBERNIA BANK & TRUST COMPANY, IN LIQUIDATION,

J. S. BROCK,

State Bank Commissioner for the State of Louisiana.

BY s/ R. N. Sims

 R. N. SIMS — SPECIAL AGENT.

BY s/ J. Edward McQuire

J. EDWARD McQUIRE — LIQUIDATOR."

There is no dispute between the parties to this cause insofar as title to the lands involved having passed from sovereignty to, and being vested in, Hibernia.

On July 7, 1933 W. S. F. Tatum, a creditor of Hibernia, as complainant, with others filed a complaint in the U. S. District Court of the Southern District of

Mississippi, Jackson Division, against Hibernia, whereby an ancillary proceeding in Mississippi was commenced to aid in the liquidation of said bank — which cause continued until terminated by order of July 12, 1954.

On November 26, 1937 W. S. F. Tatum made an offer to R. N. Sims, President of Celtic Land and Improvement Company, to purchase its holdings in Lamar, Pearl River, and Stone Counties for the sum of $140,000, without any reservations. Apparently not known to Mr. Tatum, the Hibernia owned the lands and was in liquidation.

A reply to the Tatum letter was made on December 10, 1937 by R. N. Sims, Special Agent of Hibernia, and J. Edward McGuire, Liquidator, enclosing a copy of Tatum's letter to R. N. Sims, and Tatum's offer was accepted by the "trust" in behalf of Hibernia upon certain conditions and exceptions as set out therein. In this letter under "Conditions and Exceptions" we find paragraph (3) (d) and (e) to contain these stipulations and restrictions:

"(d) *Our trust in nowise owns the mineral rights* upon or beneath the lands described as East Half (E½) of Southeast Quarter (SE¼), and Southeast Quarter (SE¼) of Northwest Quarter (NW¼), Section 19, Township 1 North, Range 15 West, Lamar County, Mississippi, and, therefore, can convey no title to these mineral rights. (Underscoring ours.)

"(e) On behalf of our trust, *we, in accordance with our telephone conversation, will reserve all mineral rights upon or beneath the lands which we proffer to convey to you by warranty, situated only in Township 1 North and Township 2 North, Range 16 West, Lamar County, Mississippi, including with said reservation the usual and customary reservation of ingress and egress rights upon said lands for mineral exploration and removal purposes.*" (Underscoring ours.)

On December 13, 1937 W. S. F. Tatum replied by letter to Sims and McGuire, advising *"your conditions and exceptions mentions in your letter of December 10, 1937 are satisfactory to us* and may we suggest that *as soon as you have the approval of the Reconstruction Finance Corporation and Civil District Court* for the Parish of Orleans that *you have proper deed made up* in favor of W. S. F. Tatum of Hattiesburg, Mississippi, . . ." (Underscoring ours.)

On December 30, 1937 the deed now controverted was executed and acknowledged.

On December 30, 1937 a collateral instrument was executed by both Hibernia and W. S. F. Tatum, which referred to two deeds of the same date in which Hibernia had made conveyances of lands to W. S. F. Tatum in Lamar and Pearl River Counties. By this collateral instrument the letter from Sims and McGuire of December 10, 1937 and Tatum's letter of December 13, 1937 to them in reply were expressly made a part of the supplemental contract *"to further define and simplify the covenants and agreements between the contracting parties."* (Underscoring ours.) Appellant urges that W. S. F. Tatum, by incorporating this letter of December 10, 1937, which embodied the mineral reservations limitation therein, concedes that, at the time, he realized that Hibernia *"will reserve all mineral rights upon or beneath the lands situated in Township 1 North and Township 2 North, Range 16 West, Lamar County, Mississippi."* (Underscoring ours.)

It is also important to note that special agent, Sims, and liquidator, McGuire, made the agreement *under the authority of an order of the Civil District Court* of the Parish of Orleans which was in charge of the liquidation. Appellants contend that the conveyance of Hibernia should not by any claim of construction be extended beyond the authority to convey and the power vested in them under said agreement and order of said

court. The appellants therefore urge that the reservation in the deed in question is by no means limited to "oil, gas, and petroleum." (Underscoring ours.)

On November 23, 1939 the attorney for W. S. F. Tatum enclosed a letter to United States District Judge S. C. Mize with a petition which he had signed for the ancillary liquidators of Hibernia in the state of Mississippi to be filed in equity in said court. The petition was filed on November 24, 1939, and paragraphs five and six of this petition contain the following significant stipulations:

"5. On December 30, 1937 the Hibernia Bank & Trust Company, in Liquidation, with the consent and approval of the Reconstruction Finance Corporation, sold to W. S. F. Tatum the properties described on 'Exhibit A' annexed hereto. In the said sale *all of the mineral rights in, on and under the said properties described on the said 'Exhibit A' were reserved by the Hibernia Bank & Trust Company, in Liquidation.*

"The Reconstruction Finance Corporation interposed no objections to the sale being made, *with the understanding that the Hibernia Bank & Trust Company, in Liquidation, would thereafter execute a deed of trust in favor of the said Corporation on the minerals and mineral rights retained in the sale.*

"6. The Hibernia Bank & Trust Company, in Liquidation, has, with the consent and approval of the Reconstruction Finance Corporation, sold to Ellis F. Ward the property described on 'Exhibit B' hereto annexed. In the said sale the Hibernia Bank & Trust Company, in Liquidation, *retained unto itself all the mineral rights, exclusive of gravel,* in, on and under the said property described in said Exhibit.

"The Reconstruction Finance Corporation *interposed no objections to the said sale being made, with the understanding that the Hibernia Bank & Trust Company, in Liquidation, would thereafter execute a deed of trust*

*in favor of the said Corporation on the mineral rights so retained."*

The pertinent parts of the appellees' attorney's letter of November 23, 1937 are as follows:

"Dear Judge:

"Enclosed please find an application on behalf of the Ancillary Liquidators of the Hibernia Bank & Trust Company *for that which the Reconstruction Finance Corporation has deemed requisite for their protection.* As you know, this liquidation has actively been under the Banking Department in New Orleans but in order to prevent attachments and attempted preferences by citizens of Mississippi, this protecting Receivership was had. . . ."

On November 25, 1939 a decree was entered in the Southern District Court of Mississippi in accordance with the petition. This decree, among other directives, authorized and ordered special agent Sims and liquidator McGuire, ancillary receivers of Hibernia, *to join in the execution of deeds of trust in favor of the Reconstruction Finance Corporation, hereinafter called R. F. C., on "the hereinafter referred to mineral rights and land, . . ."*

The relevant parts of the decree are:

"It is therefore, ordered, adjudged and decreed by the Court that R. N. Sims and J. Edward McGuire, ancillary receivers herein, be and they are hereby authorized and *directed to join with Hibernia Bank & Trust Company,* in Liquidation, and the domiciliary liquidating officers in the State of Louisiana *in the execution of a deed of trust or deeds of trust covering the retained mineral rights in, on and under the lands herein firstly and secondly described,* and . . ., *all in favor of the Reconstruction Finance Corporation as security for the payment of the hereinabove described indebtedness of the said Bank in Liquidation to the Reconstruction Finance Corporation."*

The lands firstly and secondly described are the lands involved in the case at bar situated in Township 1 North, and Township 2 North, Range 16 West.

The order of July 12, 1954 of the United States District Court terminating the ancillary liquidation and releasing the ancillary receiver, J. Edward McGuire (Special Agent Sims having died) also *ratified, approved and confirmed the acts of Sims and McGuire relating to the execution of the deeds of trust to the mineral rights and land in favor of the R. F. C.* which are in litigation in the case at bar.

On July 31, 1940, approximately two years and seven months subsequent to the execution of the deed to W. S. F. Tatum by Hibernia, through the same agents in charge of the liquidation, *Mr. Tatum obtained, through the consent of the same Louisiana Court, an oil, gas and mineral lease dated July 31, 1940. This lease provided that lessee Tatum or assigns agreed:* "*To pay Lessor what under the circumstances shall be a reasonable money royalty for any other minerals, other than oil, gas and casinghead gas,* produced and marketed by Lessee from said land." *A provision of one-eighth royalty on sulphur, not exceeding one dollar per long ton, was therein incorporated.* The lease further provided: "If operations for drilling a well or *excavating a mine be not commenced on said land before the 30th day of April 1941, and prosecuted thereafter with diligence at or until completion, this lease shall terminate as to both parties.*" (Underscoring ours.)

*Over a year later, on April 1, 1941, Mr. Tatum assigned the lease to the Freeport Sulphur Company.* This assigned lease was filed for record on April 3, 1941 and recorded on April 9, 1941. *Appellants urge that the assignment by Tatum constitutes additional proof that Tatum recognized the rights of Hibernia to the sulphur and to other minerals,* other than oil, gas and casinghead gas.

On October 7, 1959 Hibernia sold and conveyed all the minerals in the subject lands to Singer-Fleischaker Royalty Company, a partnership, composed of Joe B. Singer, R. H. Fleischaker, et al., being the appellants herein. This interest amounts to 8,788.67 mineral acres, more or less, *"reserved from sale to W. S. F. Tatum* by act of sale passed before A. P. Miceli, Notary Public, on December 30, 1937 . . ."* This sale of *all mineral interests* in subject lands was authorized to be conveyed by an order of the Civil District Court for the Parish of Orleans dated October 1, 1959 in cause number 202-253, "In re: Liquidation of Hibernia Bank & Trust Co." The purchase price of these minerals in Lamar and George Counties was $215,190.

Appellants' interest in the hydrocarbons, oil, gas and petroleum involved is not in dispute. Appellants admit that their interest therein is subject to the outstanding leases owned by Humble Oil Company. The sole question involved here is whether sulphur, salt, and all other minerals, including oil, gas and petroleum in addition thereto, subordinate to said leases, belong to the appellants under their aforesaid deed, or do they belong to the heirs, successors and assigns of W. S. F. Tatum, the appellees, by virtue of the deed to W. S. F. Tatum from Hibernia in Liquidation of December 30, 1937.

The briefs in this case represent several scores of years of study of the law and experience in its application. In the chancery court the briefs of counsel exceeded two hundred pages, and the briefs of counsel in the case at bar exceed considerably the fifty pages to which all briefs are required to be limited. Over sixty cases have been cited respectively by counsel for both sides. This opinion, however, will deal solely with those questions which are requisite in disposing of this case. To treat and decide every collateral point urged by both sides in this case would require an opinion of great extended length, which is unnecessary.

The appellants and the appellees both maintain that the terms of the deed are so plain as to admit no construction thereof except to reserve, insofar as the appellants are concerned, all minerals in the grantor, Hibernia. Insofar as the appellees are concerned, it is contended that the deed is so plain as to show that all minerals except hydrocarbons were conveyed by Hibernia to Tatum. Both maintain that the terms of the deed are express and explicit; that this Court may construe from the deed itself the intention of the parties. The appellees maintain that the deed alone, when appropriately construed, vested title in Tatum to all minerals except the hydrocarbons. The appellants assert that it is obvious that all minerals were reserved by Hibernia, but appellants maintain, in addition, that if the deed should be determined to be ambiguous, then the contemporary document of clarification signed by Tatum as part of the whole transaction shows clearly that all minerals in the subject land were intended to be and were reserved by Hibernia and were not conveyed to Tatum.

Our study of the record convinces us that this basic question is one of law and not of fact. The material facts as testified to in the chancery court and the pleadings are not in dispute, and therefore the determination of the basic issues resolves itself into an interpretation of the law governing the same. It is also urged by the appellants that the Court should not construe the deed to be in direct conflict with the interpretation which the parties themselves made, and appellants urge that the construction which the parties to the deed gave shows conclusively that all minerals were reserved by the grantor, Hibernia.

Injected into the appellees' brief is the assertion that the statute of limitations had run against the court in the case at bar. This the appellants deny, and further urge that the receivers and bank liquidators had no

authority and could not and did not convey more than intended by the court and authorized by the order thereof. The appellants further urge that the courts will give effect to each word in the deed and will adopt a construction consistent with the contemporaneous construction by the parties. This last contention is based upon the premise that the deed itself does not per se clearly and unmistakably reflect the intention of the parties. An analysis of the granting clause of the deed, the reservations, the pleadings and the exhibits convinces us that there is ambiguity in the deed. The deed could have been drawn and couched in other language which would have eliminated the possibility of this contest, but since the language which is used does admit various interpretations and constructions, it is safe to say that there is ambiguity in the deed, and this is borne out by the fact that the appellees, complainants below, brought suit in order that they might maintain and establish their interpretation of the words in the reservations of the deed. The contest made by the defendants below, appellants here, likewise is proof of the fact that the deed does not speak for itself and that there are grounds and potentials of different interpretations which have been placed upon this instrument by the parties to this suit.

The appellants conclude that the words "mineral rights reserved," "mineral reservations," "the reservation of oil, mineral, gas and petroleum," and statements in similar vein, together with the reservation of ingress and egress for the purpose of mining, boring or making other explorations thereon, removing therefrom such oil, mineral, gas, petroleum, meant from the beginning, and should be construed to include, all minerals as well as oil, gas and petroleum. The ultimate goal of the appellees, on the other hand, is that such words should be either disregarded by interpretative reformation of the deed or strictly construed so as to mean

hydrocarbons only, excluding from the reservation or exception all minerals in the technical sense and more particularly all solid minerals. Appellees contend that when construing the words separately or all together, it was the obvious intention of the grantor to reserve only oil, gas, petroleum and hydrocarbons, and that their interpretation correctly admits this conclusion.

Appellants urge further that if this Court looks only to the deed and to the petition and order which gave it life and validity, necessarily introduced by the appellees themselves as authority for their deed, the appellants must prevail, but assume, for the purpose of argument only, that this Court will find to be applicable the cases of Cole v. McDonald, 236 Miss. 168, 109 So. 2d 628 (1959); Witherspoon v. Campbell, 219 Miss. 640, 69 So. 2d 384 (1954); and Cummings v. Midstates Oil Corporation, 193 Miss. 675, 9 So. 2d 648 (1942); and will adjudge that all or part of the other evidence is pertinent.

In the case at bar, it is pointed out by appellants that there are two distinct classifications of evidential matter in addition to the instrument itself: (1) The petition and decree of the District Court of the Parish of Orleans dated December 30, 1937, which gave this deed life and validity, and (2) the petition and decree of said court authorizing the execution of the supplemental and collateral agreement, also dated December 30, 1937, between the grantor and the grantee in the deed in question, all instruments being executed on the same day.

There is another factor which makes this case somewhat different from the average case, in that attached to and made a part of the petition and the supplemental and collateral agreement between the liquidators of Hibernia and W. S. F. Tatum were letters dated December 10, 1937 to Tatum from the liquidators, and his reply of December 13, 1937, all of which were

made a part of the order of the district court authorizing the execution of the agreement *"to further define and simplify the covenants and agreements between the contracting parties."* (Underscoring ours.) These two simultaneous petitions, orders and written instruments are of particular importance since they constitute a part of the same transaction and therefore must all be construed together. The secondary type of evidence consists of all the other written documents and oral testimony, including subsequent actions of Tatum, his attorneys, and the liquidators of the bank, together with the execution and subsequent documents by Tatum and the liquidators and the filing of subsequent petitions and obtaining of subsequent orders, and all of the other evidence concerning the surrounding circumstances and the situation of the parties which shed any light upon the intent and understanding of the parties to the deed, as was true and held to be appropriate in Witherspoon v. Campbell, *supra,* and Cole v. McDonald, *supra.* The appellants rely more upon Cole v. McDonald, while the appellees rely upon Witherspoon v. Campbell. This latter case was decided on January 18, 1954, while Cole v. McDonald was decided on March 16, 1959, some five years later. In the Cole case we find the reservation to be in this language:

"Except that the grantor hereby excepts and reserves unto herself, her heirs and assigns, one-third (1/3) of the oil and gas *or other minerals or the proceeds therefrom,* which may be found or produced from, under, and on the above described lands, *together with the right of ingress and egress* for the purpose of *developing and extracting* said oil and gas and *other minerals,* and the right to use such part of the surface of said premises as may be necessary or convenient in the *development and extraction of said minerals."* (Underscoring ours.) 236 Miss. at 173; 109 So. 2d at 630.

This Court held that, under that exception and reservation, minerals of any kind or character, including bentonite, were included.

In the case of Witherspoon v. Campbell, 219 Miss. 640, 646, 647, 69 So. 2d 384, 386, we said:

"It seems to be well settled in most jurisdictions that in determining the meaning of a conveyance or reservation of minerals, regard may be had not only of the language of the deed, but also to the situation of the parties, the business in which they were engaged and the substance of the transaction. 36 Am. Jur., Mines and Minerals, Sec. 31, page 302; Ib. Sec. 35, page 305; 58 C. J. S., Mines and Minerals, Sec. 155, page 323, where the latter text also states that: 'In doubtful cases, the meaning of the word "minerals" will be restricted to that given by the custom of the country in which the deed is to operate.'

"Considering the situation of the parties in the instant case, the business in which they were engaged and the substance of the transaction, it should be stated that the grantor was not engaged in construction work of any kind that would render of any use to her the strata of gravel which underlaid this tract of land, and that any attempt on her part to utilize the same would result in the destruction or great impairment of the surface rights which she was conveying to the grantee in the deed of the land to him for farming purposes, and that since the first oil field in this state had been discovered in the county where this land is situated, five years prior to the execution of this deed of conveyance, the custom in the county where the deed was to operate was necessarily that of dealing in minerals as being oil, gas and other like minerals as distinguished from sand and gravel where no specific mention of the latter is made in a conveyance, and that since the grantor was likewise the attorney who prepared both the original and the correction deed which made no specific mention

of sand and gravel, the conveyance should be construed most strongly against her, after the exclusion of incompetent oral testimony at the trial in regard to the alleged conversations had between the grantor and the grantee as to what was to be included in the deed.

"It also seems to be generally recognized that the word 'minerals' has no definite and certain meaning that can be attributed to it in all cases. Thompson on Real Property, Vol. 1, page 87; 1 A.L.R. 2d Annotation, beginning at page 787. And this view is also supported by the text on Mines and Minerals in 36 Am. Jur. and 58 C.J.S. hereinbefore cited." Baker v. Nason, 236 F. 2d 483 (5th Cir. 1956); Magnolia Textiles, Inc. v. Gillis, 206 Miss. 797, 41 So. 2d 6 (1949); and Sumter Lumber Co., Inc. v. Skipper, 183 Miss. 595, 184 So. 296 (1938).

 █ Appellants urge that the Cole case, *supra,* is the latest expression of this Court in Mississippi concerning the interpretation and meaning of exceptions and reservations covering minerals in the deed in the case at bar; that in the case at bar, the reservations cover minerals of any kind or character, specifically including salt. The objection of the appellees to the introduction of the letters, the petition and the order is conclusively answered in the decision in the Cole case. The contention of the appellees that the contract of sale with its attachments, the petition and order of the court, and similar documents, and the other matters offered or alleged by the appellants are not admissible, is likewise refuted by the Cole case. The Cole case establishes the fact that such matters under situations as are present in the case at bar are admissible in evidence to remove or dissipate the ambiguity and to establish, if possible, the clear intention of the parties. The admissibility of the deed dated December 30, 1937, the construction of which is the subject matter of this proceeding, and the petition and order giving it life and validity, are certainly admissible. The contract of sale

dated the same date, December 30, 1937, under which the deed was executed, and the letters attached thereto, including the letter from Hibernia dated December 10, and Mr. Tatum's acceptance of December 13, which letters said contract recites: "To further define and simplify the covenants and agreements between the contracting parties . . . are each and all annexed to and made a part of said collateral or supplemental contract," are likewise admissible. It cannot be doubted that the petition filed in the liquidation of Hibernia, praying for the order authorizing the execution of the deed, to which there are attached as exhibits the contract of sale dated December 30, 1937, with all attachments thereto, and a copy of the deed now being construed, are likewise admissible. The allegations of the answer to complaint and cross-bill, which were substantially admitted, that "there was production of both sulphur and salt near New Orleans, Louisiana, to the south and west. . . . There were huge salt mines at Avery Island and Jefferson Island in Louisiana, and the name Jefferson Island Salt was widely advertised in the area as to become a common household item," are also admissible. Proof showed that the salt underlying the lands here involved was a depth of approximately 1500 feet below the surface. The proof also shows undisputedly that the mining for salt could be carried on under the rights of ingress and egress reserved without the destruction of any substantial portion of the surface. The gravel which had been removed from the subject lands was from five small pits located at indefinite and unnamed points on the 8,875.75 acre tract here involved. All the subsequent leases, contracts, petitions and letters written by or in behalf of W. S. F. Tatum and the liquidators of the bank, and the order of the District Court of the Parish of Orleans, under the Cole case, were admissible. Cummings v. Midstates Oil Corporation, *supra;* Breard v. Pyramid Oil & Gas Co., Inc., 191

La. 420, 185 So. 303 (1938); Sheridan Oil Co. v. Cunningham, 186 Okla. 618, 99 P. 2d 497 (1940); Earp v. Mid-Continent Petroleum Corp., 167 Okla. 86, 27 P. 2d 855, 91 A.L.R. 188 (1933); Hinson v. Noble (Tex. Civ. App. 1938), 122 S.W. 2d 1082; Ramage v. South Penn Oil Co., 94 W. Va. 81, 118 S.E. 162, 31 A.L.R. 1509 (1923); Hopkins v. Texas Co. (10th Cir. 1933), 62 F. 2d 691, cert. denied 290 U.S. 629, 54 S. Ct. 48, 78 L. Ed. 547; and 16 Am. Jur. *Deeds* sec. 174 (1938).

■■ ■ The Cole case likewise vitiates the contention of appellees here asserted under the doctrine of ejusdem generis and under the maxim noscitur sociis. Just as in the Cole case the doctrine of ejusdem generis was not permitted, the doctrine is likewise inapplicable in the case at bar because it would have been in the teeth of the evident intention of the parties as is hereinafter pointed out. The application of the doctrine here would defeat the purpose sought to be accomplished by the use of the words, the meaning of which is under consideration. It would do violence to the manifest intention of the parties as represented by their deed and by their acts and would defeat the express purpose which the parties were seeking to accomplish.

There is a striking similarity between the facts in the Cole case and the ruling therein and the facts in the case at bar. The contemporaneous agreement in the Cole case is found in the words "reserves a one-third (1/3) interest in and to all gas, oil or other minerals that may be found or produced from the lands in Monroe County," and in a similar instrument dated March 20, 1928, in which reference was made to vesting an undivided one-third interest in the oil, gas and minerals thereon in the said L. B. Cole, followed by the words, "and the one-third undivided interest in and to said minerals in the said Cleo McDonald Young." In the case at bar the words used in the collateral agreement and its attachments, which were made a part thereof, are: *"We*

*will reserve all mineral rights under and beneath the lands* . . . including the usual and customary *reservations of ingress and egress* rights upon said lands *for mineral exploration and removal purposes.''* (Underscoring ours.) McNeese v. Renner, 197 Miss. 203, 21 So. 2d 7 (1945); Moss v. Jourdan, 129 Miss. 598, 92 So. 689 (1922). The wording of the instruments before the court in the case at bar are as favorable, if not more so, to the appellants than the wording of the instruments before this Court in the Cole case. In the Cole case we held that there had been reserved oil, gas and other minerals of whatever kind or character, including the solid mineral bentonite, as follows:

''The authorities are generally agreed that the word 'minerals' has no definite or certain meaning. In the case of Witherspoon, et ux vs. Campbell, 219 Miss. 640, 69 So. 2d 384, this Court said: 'It also seems to be generally recognized that the word ''minerals'' has no definite and certain meaning that can be attributed to it in all cases.'

''In 58 C.J.S., Mines and Minerals, page 17, we find the following: 'Mineral' is a word of general language, and not per se a term of art or trade. It is not a definite term, and is used in so many senses, dependent on the context, that the ordinary definitions of the dictionaries throw but little light on its signification in a given case, and therefore, it is not capable of a definition of universal application, but is susceptible of limitation or expansion according to the intention with which it is used in the particular instrument or statute.

''In the case of Northern Pacific Railway Company v. Soderberg, 188 U. S. 526, the Court said: 'The word ''mineral'' is used in so many senses, dependent upon the context, that the ordinary definitions of the dictionary throw but little light upon its signification in a given case.

"In 18 R. C. L., Mines, page 1094, it is said: 'The most reasonable rule is that each case must be decided upon the language of the grant or reservation, the surrounding circumstances and the intention of the grantor if it can be ascertained.' " 236 Miss. at 183, 109 So. 2d at 635.

In the Cole case, *supra,* in deciding the intention of the parties, we concluded:

"We cannot conceive how the intention of the parties to vest in each of them an undivided one-third interest in the oil, gas and other minerals of whatever kind or character could have been more clearly and definitely expressed." 236 Miss. at 183, 109 So. 2d at 635.

In the Cole case, *supra,* we discussed the Witherspoon case, *supra,* and the two cases are easily distinguishable. The granting clause of the deed conveyed and warranted to John Witherspoon, in that case, the service rights and all timber lying in, on or growing on said lands. The grantor in the deed claimed under the reservation all sand and gravel being in or on the land. We held in that case that the sand and gravel were not included in the reservation of the deed. The appellees undertake to find an analogy in that case and the case at bar. We do not think the two cases are analagous on their facts. In the Witherspoon case we pointed out that the sand and gravel ordinarily are not included in the grant or reservation of minerals or mineral royalty, although there is on the land involved sand and gravel susceptible of commercial production and use. We further pointed out in the Witherspoon case that the land conveyed was entirely underlaid by gravel and that the removal of gravel from the land would destroy the surface. We further pointed out that the conveyance there involved was executed approximately five years after discovery of oil and gas in Yazoo County, and that it was a matter of common knowledge that grantors and purchasers of minerals under conveyance or reservation of all minerals

did not contemplate the inclusion of sand and gravel in the conveyance or reservation.

Insofar as the admissibility of the numerous instruments executed by W. S. F. Tatum during his lifetime and Hibernia in Liquidation is concerned, we have the case of Cummings v. Midstates Oil Corporation, *supra,* as a guide. In that case this Court stated:

"By these acts and agreements the parties have placed contemporaneous and practical construction on the Pendleton lease as including the ten acres. The rule is set out in 16 Am. Jur., page 536, Section 174, in these words: 'A deed which is ambiguous or uncertain may be definite and certain by the practical construction of the parties to it while in interest. The construction put on such a deed by the parties is an indication of their intention. Therefore, where the construction of a deed is doubtful, great weight is to be given to the construction put upon it by the parties, especially in the case of doubtful questions which must be presumed to be within their knowledge, and such practical interpretation of the parties themselves by their acts under a deed is entitled to great, if not controlling, influence.'

"In Sumter Lumber Co. v. Skipper, 183 Miss. 595, 184 So. 296, 298, 835, this court used this language: 'And when the parties have for some time proceeded with or under the deed or contract, a large measure, and sometimes a controlling measure, of regard will be given to the practical construction which the parties themselves have given it, this on the common sense proposition that actions generally speak even louder than words.'

"Such construction by the parties appears to carry much weight in oil and gas leases. Earp v. Mid-Continent Petroleum Corp., 167 Okl. 86, 27 P.(2d) 855, 91 A.L.R. 188; Sheridan Oil Co. v. Cunningham, 186 Okl. 618, 99 P. (2d) 497; Breard v. Pyramid Oil & Gas Co., 191 La. 420, 185 So. 303; Hinson v. Noble (Tex. Civ. App.), 122 S. W. (2d) 1082; Hopkins v. Texas Co., 10

Cir., 62 F. (2d) 691, certiorari denied 290 U. S. 629, 54 S. Ct. 48, 78 L. Ed. 547; Ramage v. South Penn Oil Co., 94 W. Va. 81, 118 S.E. 162, 31 A.L.R. 1509.

"But these subsequent conveyances represented that the ten acres were under the Pendleton lease, and the grantees therein acquired rights under and became parties to that lease. By their acts and conduct and contracts they adopted, ratified and confirmed the Pendleton lease with the ten acres included therein." 193 Miss. at 697, 698, 9 So. 2d at 652.

In Grissom v. Anderson, 125 Tex. 26, 79 S.W.(2d) 619, 622 (1935), Frank and Taylor Anderson executed an oil and gas lease on lands to one Welch, and after subsequent transactions and transfers and assignments, other parties claimed the lease on the subject lands and the minerals involved therein. In holding that the subsequent conveyances and recitals ratified and confirmed and gave life to the lease from Anderson to Welch which would not have been operative since it was not signed by their wives and was homestead property, the court said: "Under the law the Welch lease was inoperative as to Taylor and Frank Anderson and their wives, and the power to make it operative rested exclusively with them. They exercised that power freely and voluntarily. They did not repudiate the Welch lease. On the contrary, a recognition of the lease was made in deeds executed by them in strict conformity with law, and the benefits arising therefrom accepted. By their acts in executing the royalty deeds above described, they gave the lease life. Their acts constituted a ratification of the lease. The purposes of the statutes have been fully met. The rights of the parties acquired thereunder became valid and binding. After they have ratified the Welch lease in the manner described above, it is not the policy of the law to permit a repudiation thereof." 193 Miss. at 699, 9 So. 2d at 652, 653.

In the light of the Cummings decision, turning to the subsequent acts of Mr. Tatum individually and through his attorneys, and the subsequent acts of the other parties to the instrument, the liquidators of Hibernia, through petitions and orders of the District Court of the Parish of Orleans, there was introduced as appellants' Exhibit 8 an order of the Louisiana court authorizing the execution of the lease by the liquidators to W. S. F. Tatum which was dated July 1, 1940. There was also introduced as an unnumbered exhibit of the appellees a copy of the lease from the liquidators to Mr. Tatum. The following are significant in connection therewith:

1. The order authorizing the execution of the lease containing the provision for a drilling program with the condition that if more than ninety days should lapse between the completion or abandonment of *"one well or mine"* and the beginning of the operations for the drilling or excavating of another *"well or mine,"* the lease would terminate. It is also provided for the retention of the forty acres "around each existing producing *well or mine."* (Underscoring ours.)

2. The order further set up the payment of *royalty on sulphur produced* from the land and also the payment of *a reasonable money royalty for any other minerals* other than oil, gas and casinghead gas produced and marketed by lessee from the land.

3. The lease provided that the lessor granted and leased to the lessee oil, gas, *sulphur and other minerals, all of the minerals* and *mineral rights* in, on and under the lands here involved.

4. It further provided the lease would remain in effect after the primary term so long as either oil, gas, *sulphur or other minerals* were produced from the lands.

5. The lease provided for royalty upon oil, gas and casinghead gas, *a separate royalty upon sulphur,* and also additionally provided that there should be paid

*"a reasonable money royalty for any other minerals* other than oil, gas and casinghead gas produced and marketed by lessee from said lands.'' (Underscoring ours.)

6. It further provided that in the event oil, gas and minerals ''covered by this contract are removed from wells *or excavations located on the above lands",* certain rights would accrue. (Underscoring ours.)

7. The lease further provided that the same would terminate unless ''operations for drilling a well or *excavating a mine be not commenced* on said lands'' before a date named. Several other references are likewise made to *mines and excavations.* (Underscoring ours.)

■■■ The rules announced in Cummings v. Midstates Oil Corporation, *supra,* make the recitations of this instrucment, entered into by the grantor and the grantees about two and a half years after the execution of the deed, controlling. *The mine or excavating of a mine is mentioned six times* in the lease and this certainly could not have been by accident, and therefore it was by design. Persons or companies *do not excavate for oil, gas and petroleum or for any type of hydrocarbons.* It is common knowledge that this type of production is realized by drilling. Mines are excavated only for solid minerals, such as salt, sulphur, gold, silver, iron, copper, etc. The record discloses that the salt was being mined by excavation in the general area of New Orleans, where the deed was executed, at the time of the execution thereof. Salt was discovered on this property under the authority of this particular lease. In addition, the repeated reference to *"a reasonable money royalty for any other minerals* other than oil, gas and casinghead gas,'' and the recitation that the lessor lease to the lessee oil, gas, sulphur and other minerals, all of the minerals and mineral rights in, on and under the lease lands described, constitutes a recognition by both the lessee and the lessor that the lessor had retained all of the

minerals and mineral rights in addition to the oil, gas and casinghead gas, and to read or construe otherwise would be to delete, or nullify completely, the word "mineral" from the reservation of the deed. ■■■ It is to be noted also that W. S. F. Tatum signed the lease. This is of significance, because he thereby affirmed the provisions thereof. It was he who had it recorded, including the petition on which it was based, which recites as an undisputed fact: "That the *petitioners are the owners of the mineral rights and interest upon the land situated in Lamar County, Mississippi,* specifically described and identified upon the mimeographed exhibit attached hereto and made a part hereof." (Underscoring ours.) *It is to be noted that in this very deed the grantee, Mr. Tatum, had received* 12,460 *acres of land upon which the mineral rights were not reserved.* Apparently the grantor, Hibernia, desired to have the exploration made in the hope of obtaining royalties and receiving the consideration paid for the lease.

■■■ As we said in the Cummings case, *supra,* the law will presume that the contract was freely entered into by the parties without coercion or overreaching. While it is not absolutely necessary to observe, nevertheless it is of some significance that the attorneys now representing the appellees were the attorneys for Mr. Tatum at the time of the purchase from Hibernia. They were the attorneys with whom the receivers dealt, and they were attorneys for the R. F. C., and attorneys for the grantees and successors of Mr. Tatum, and have been since 1919. It is obvious, therefore, that these attorneys were required to construe the deed as written, the provisions as clearly set forth in the contemporary collateral and supplemental agreement, and the petition and order demonstrate that they were also construed by Mr. Tatum and Hibernia in the lease in question. The petition and order were introduced as Exhibits 4 and 5 to the petition of ancillary receivers of Hibernia

filed November 25, 1935 in the receivership instituted in the District Court of the United States by Mr. Tatum, ancillary to the Louisiana receivership. This petition requested authority to join with the liquidators in the execution of the deed of trust to the R.F.C. *upon the minerals here involved,* and an order of the district court granted such authority. The following items are significant:

1. The ancillary receivership had been instituted upon the petition of Mr. Tatum, one of the creditors of Hibernia Bank, through their present attorneys, and the attorneys who were thereafter appointed attorneys for the ancillary receivers.

2. This petition recites the sale of the lands to Mr. Tatum on December 30, 1937. It further recites in the said sale: *"All the minerals, mineral rights in, on and under the said property described in Exhibit 8 were reserved by Hibernia Bank & Trust Company, In Liquidation."* (Underscoring ours.)

3. There is a recitation in the succeeding paragraph of the petition for the sale of certain other lands to Ellis F. Ward, followed by the reservation. In the said sale, Hibernia retained unto itself "all the mineral rights exclusive of gravel in, on and under the said property described in the said exhibit."

4. The order granted upon the petition recites that the liquidators had "sold W. S. F. Tatum the lands hereinafter first described *with the reservation of all the mineral rights* and sold to Ellis F. Ward, the lands herein secondarily described with the reservation of *all the mineral rights, exclusive of gravel."* (Underscoring ours.) The petition and the order show that not only was it recognized that all mineral rights had been reserved in the sale to Tatum, but made a clear distinction between that sale and the sale to Ward, in which all mineral rights had been reserved with the exception of gravel.

The appellees claim their title through a deed from W. S. F. Tatum to W. O. Tatum, W. S. Tatum and F. M. Tatum, dated April 6, 1943. Under the numerous authorities quoted by counsel for the appellees in this case, who are the grantees in said deed, or their successors, the appellees cannot claim any greater title than they received by this muniment of title which is one link in their chain of title. In this deed there is no mention of oil, gas and other minerals, or oil, gas and petroleum, or similar words. There is no limitation or purported limitation of reference to the deed by which W. S. F. Tatum received title. This deed included numerous lands in addition to the lands here involved, and it is significant for the following reasons:

1. The lands are described with the township and range centered and underlined, which is followed by description of the section or portion of section conveyed. The lands in Township 1 North, Range 16 West are described as follows: *Township 1 North, Range 16 West*: Section 26. N½ of SW¼, *less mineral rights.*

2. There were listed all the numerous lands in Township 2 North, Range 16 West below the following heading: *Township 2 North, Range 16 West. Mineral rights reserved.*

Appellants urge that this constitutes an additional recognition by Mr. Tatum, and thus the appellees, that the reservation *was of mineral rights generally* and not simply of hydrocarbons. The grantees accepted this deed with the reservations therein stated and are restricted thereby. In re Liquidation of Hibernia Bank & Trust Co., 205 La. 890, 18 So. 2d 330 (1944).

Exhibit 9 of appellants was a copy of an assignment from W. S. F. Tatum to the Freeport Sulphur Company, which affected two distinct tracts of land, the first tract containing 2,440 acres therein particularly described, and the second tract containing 8,875.75 acres, being the lands in which the mineral rights are the

subject of this suit. This instrument is significant for the following reasons: In the first tract, containing 2,440 acres, all but eighty acres were a part of the lands included in the deed from Hibernia to Tatum, conveyed to him in fee simple, and the remaining eighty acres were apparently acquired from some other source. As to all such lands it is recited that, "Tatum granted and leased, subject to the conditions therein set forth and for the purposes therein named, to Freeport, the exclusive right to enter certain lands," and described them. This patently evidences the claim of Tatum to the ownership of the lands as to which no reservation was made and to the minerals therein, including the sulphur. But as to the 8,875.75 acres involved in this suit, this instrument executed by W. S. F. Tatum recites that Tatum has assigned to Freeport "that certain mineral lease dated July 31, 1940 executed by the State Bank Commissioner of the State of Louisiana . . . insofar as said lease pertains to sulphur . . . said lease granting to Tatum the exclusive right to enter certain lands therein described," setting forth the description of the lands here involved. This likewise is a clear recognition by Tatum of the fact that *his right to enter the lands to remove the solid mineral sulphur was by virtue of the lease from the liquidators and not under the claim of ownership.* The judgment of the Civil District Court for the Parish of Orleans in liquidation of Hibernia authorizing the execution of the deed to Singer and the deed itself are also significant for the reason that the order refers to the sale of "mineral interests", and both the order and the deed describe that which is conveyed, as follows: *"One hundred percent mineral interest in 8,788.67 acres,* more or less, in Lamar County, Mississippi, *reserved from sale to W. S. F. Tatum by act of sale passed before A. P. Mosele, Notary Public, on December* 30, 1937, recorded in Land Record Book GG, pages 515, 522, in the office of the Chancery Clerk

of Lamar County, Mississippi.'' The record is silent insofar as any document being introduced by the appellees evidencing a construction by either Tatum or Hibernia, or by W. O. Tatum, W. S. Tatum, F. M. Tatum, that the exception and reservation in the original deed and the deed to the last three named persons was construed to cover or intended to cover only oil, gas and petroleum or other hydrocarbons.

Appellees cannot seriously object to the lower court's or this Court's consideration of the federal court orders, supplemental instrument, subsequent leases and federal court adjudication which shed light on the fact that all mineral rights were reserved and excepted in the sale of the subject lands to Tatum by Hibernia, because in the trial in the chancery court appellees urged that this be done when their objectives were served.

Moreover, appellees cite the case of Sumter Lumber Company v. Skipper, *supra,* which, as was hereinabove pointed out, authorized the consideration of situations, circumstances, conditions surrounding the parties at the time of the execution of the instrument, and to what, as may be fairly assumed, the contracting parties had in contemplation, to be looked to by the court where the language in the instrument (deed) is not clear and explicit. Appellees cite also from 18 R.C.L. *Mines* sec. 3, p. 1094 (1917), from which they quote as follows: ''The most reasonable rule is that each case must be decided upon the language of the grant or reservation, the surrounding circumstances and the intention of the grantor if it can be ascertained.'' It will suffice to say that the execution of the deed did not obliterate or absorb the necessity for considering the letters and collateral agreement in determining the intentions of the contracting parties.

Insofar as the claim of adverse possession on the part of Mr. Tatum, his heirs and successors is concerned, the record wholly fails to establish the basic require-

ments essential to create title by adverse possession in the appellees to the minerals other than hydrocarbons for the statutory period of time, irrespective of whether or not the statute of limitations could run against this property for the alleged reason that it was in custodia legis.

In conclusion, an objective analysis of the myriad contentions of the appellants and the appellees convinces us that they can be resolved into these simple irreducible minimums. The appellees contend that the appellants wish to expand the word "mineral" judicially so as to mean "all mineral rights," while the appellants contend that the appellees wish to shrink or contract the word "mineral" to where it means nothing, where it is eliminated entirely or becomes synonymous with the words "other hydrocarbons." This Court does not desire to do either, nor does it wish or have the authority to write a new contract for the contracting parties. Its sole objective is simply to determine what the intentions of the parties were when they entered into the contract, the deed in question. This Court is interested in what the Hibernia intended to convey and thought it was conveying and what Mr. Tatum thought Hibernia conveyed and what he actually received. The appellees strenuously objected on the hearing to the showing of the surrounding circumstances by the documentary evidence; they objected to the deed, the court petition, the orders, the supplement, the lease, the federal court petition and the order, claiming that these expanded the interpretation of the intention of the contracting parties, but when it was to their convenience or advantage they stated at the same trial that they desired "all the color in this we can get;" that they wanted "that the light be turned on from every possible angle and that is what I am trying to do." This is in contravention of the most reasonable rule which is urged and cited by the appellees, which admits, in the search for the intention of the

grantor or the grantees, that surrounding circumstances, conditions and matters should be considered where the meaning is ambiguous.

Considering all of the pleadings, the exhaustive briefs of counsel and the proof which is offered in this case, we reach the conclusion that Hibernia did reserve and did not convey to Tatum all the mineral rights in the land in controversy other than oil, gas and petroleum. We feel that this is reflected and shown by the intention of the parties, the grantor, Hibernia, and the grantee, Tatum; that this is shown by the intention of the Louisiana court on the basis of the petitions presented to it. It is shown by the deed, by the supplemental agreement, and by the federal court order adjudicating the very question, obtained under the petition signed by counsel who represented Reconstruction Finance Corporation, who had represented the appellees, and who had represented Mr. Tatum, the grantee. Furthermore, the prior letter to Tatum from Hibernia requiring the reservation of all the mineral rights in the 8,875.75 acres in controversy as a condition of the sale is also indicative of the intention of the grantor to reserve the mineral rights. The letter from Mr. Tatum stating that this mineral reservation was satisfactory and the bringing forward of those letters as a part of the agreement, so understood and approved by the Louisiana court, contemporaneously with the final completion of the transaction on December 30, 1937 convinces us that the intention of the parties was as claimed by the appellants. Beyond this, the intention is also reflected by the subsequent acts of Tatum, who sought and obtained the mineral lease in 1940, also based on the petition to the Louisiana court which was deemed advisable by Tatum and done for Tatum, which recited title to the minerals was vested in Hibernia, In Liquidation, or, technically, in the state of Louisiana bank commissioner, and the order thereon, ratifying and confirm-

ing the deed and lease, all of which were recorded in Lamar County in April, 1941, and all of which were introduced in evidence here by the appellees themselves.

In conclusion and from all circumstances, evidence, pleadings and in conformance with the former decisions of this Court, we hold that it is apparent that it was the intention of the grantor, Hibernia, to reserve and it did reserve all of its oil, gas, petroleum and other minerals under the subject lands. It is apparent that it was the intention of the Louisiana court, as shown by the deed, the supplemental agreement, the adjudication of this specific question, obtained by requisite petition, properly executed, and the order thereon. It is apparent that the R. F. C. so understood the mineral reservation as shown by the petition and the subsequent acts of Hibernia and R. F. C. It is apparent also that Mr. Tatum realized that Hibernia intended to and did reserve the minerals as shown by his letters and the collateral agreement, by his subsequent lease of all the minerals from Hibernia and his assignment of the lease to Freeport Sulphur Company, together with the stipulations as to the payment for minerals to be obtained thereunder, and finally by all his acts with the State Bank Commissioner of Louisiana, and the District Courts of Louisiana and Mississippi. It is also apparent that these minerals which Hibernia reserved were conveyed to the appellants, who now have title to them.

The learned chancellor erred in not so finding, and for the foregoing reasons the decree of the chancery court is reversed and judgment is entered here for the appellants.

Reversed and judgment entered for appellants.

*Lee, C. J., and Ethridge, Gillespie and Jones, JJ.,* concur.